## STATE v. J. M. BREWER.

(Filed 27 January, 1932.)

**1. Criminal Law L e—Finding that witness is an expert is conclusive on appeal when finding is supported by competent evidence.**

The adjudication by the Superior Court that a witness is an expert will not be disturbed in the Supreme Court on appeal when there is competent evidence to support his finding.

**2. Criminal Law G i—Where expert has made proper examination of bank's assets he may testify that bank was insolvent at certain date.**

Upon the trial of a bank official under the provisions of section 224(g), N. C. Code (Michie), for permitting deposits to be taken by employees when he knew the bank to be insolvent, testimony of a certified public accountant who had had experience in such matters and who had examined the books of the bank and had obtained from the directors, collectively and individually, information as to the value of its assets including lands and collateral, that the bank was insolvent at the time in question is not objectionable and an exception thereto by the defendant will not be sustained on appeal.

**3. Banks and Banking I b—In prosecution for permitting deposits when bank was insolvent testimony of reports to Commission is properly excluded.**

On the trial of a bank official for permitting deposits to be taken by employees when he knew the bank to be insolvent, section 224(g), N. C. Code (Michie), a question asked a certified public accountant who had testified to the bank's insolvency as to whether he had considered reports made to the Corporation Commission covering a certain period is properly excluded as *res inter alios acta.*

**4. Appeal and Error J e—It must appear what excluded testimony would have been in order for exception to be considered on appeal.**

Where an exception is entered to the exclusion of certain testimony it must appear of record on appeal what the testimony, if permitted, would have been, or the exception will not be considered.

**5. Criminal Law I g—Misstatement of contentions of a party should be brought to trial court's attention in apt time.**

Exception to the statement of a party's contentions in his charge to the jury must be taken in apt time or it will not be considered, and in this trial of a bank officer for permitting deposits in his bank with

knowledge of its insolvency, the statement of the contention that the bank was operating on less than the required legal reserve, was a pertinent circumstance to go to the jury bearing upon the knowledge of the defendant of the bank's insolvency.

6. **Same—Bank is insolvent within the meaning of the statute when the market value of its assets is less than its liabilities.**

A bank is insolvent within the meaning of the statute making an officer criminally liable for permitting deposits to be received with knowledge of its insolvency, when the actual cash market value of its assets is not sufficient to pay its liabilities to its depositors or other creditors, and *Held*, the charge of the court upon the evidence in the case was correct.

7. **Same—Bank officer's admission that he knew of insolvency held competent in prosecution for permitting deposits knowing insolvency.**

Upon the trial in this case of an officer of an insolvent bank for permitting deposits to be received after knowledge of its insolvency: *Held*, testimony of the officer's admissions that he knew of the insolvency of the bank at the time in question with his explanation thereof is held competent on appeal.

8. **Same—Instruction in this prosecution for permitting deposits knowing of bank's insolvency held correct.**

Where an officer of a bank is on trial under an indictment charging that he permitted deposits to be made in the bank when he knew it was insolvent, an instruction supported by the evidence is not erroneous that the jury must not convict upon an assumption of the defendant's guilt but that they must find beyond a reasonable doubt from the evidence that the defendant was guilty of the offense charged against him, or that' he had actual knowledge of the insolvency as defined by the court, and that the *opinion* of *bank* *auditors* and *examiners* is not conclusive.

9. **Criminal Law L e—On appeal in criminal action the Supreme Court can review only matters of law or legal inference.**

The Supreme Court on appeal in a criminal action against an officer of an insolvent bank for permitting deposits to have been received with knowledge of the bank's insolvency can review only matters of law or legal inference. Art. IV, sec. 8.

APPEAL by defendant from *Barnhill, J.,* at June Term, 1931, of WAKE. No error.

This was a criminal action against John M. Brewer, T. E. Bobbitt, S. W. Brewer, T. M. Arrington and R. M. Squires, tried before his Honor, M. V. Barnhill, and a jury, at the June Special Term, 1931, of Wake Superior Court, upon a bill of indictment found at the June Term, 1931, of said court, charging said defendants, including said John M. Brewer, he being an officer, to wit, president of the Citizens' Bank of Wake Forest, N. C., with receiving, or permitting to be received, deposits in said bank at said time knowing the said bank to be insolvent in violation of section 224(g), N. C. Code, 1927 (Michie). At the con-

clusion of the State's evidence motion for judgment as of nonsuit as to the defendants, T. M. Arrington and R. M. Squires, was allowed by the court below. There was a verdict of not guilty by the jury as to defendant, S. W. Brewer. Upon the foregoing charge the defendant, John M. Brewer, was placed upon his trial and pleaded not guilty. The jury returned a verdict of guilty.

The court below rendered judgment on the verdict: "And now, the defendant, J. M. Brewer, being at the bar of the court in his own person, and the judgment of the court being prayed by J. C. Little, Esq., solicitor for the State; it is ordered, considered and adjudged that the defendant, the said J. M. Brewer, now here, be imprisoned in the State prison at Raleigh, N. C., for an indeterminate sentence of not less than one year nor more than three years, as provided by section 7738 of the Consolidated Statutes of North Carolina." The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*Chas. U. Harris, Willis G. Briggs, W. H. Sawyer and Wm. B. Jones for defendant.*

CLARKSON, J. The defendant was indicted under section 224(g) N. C. Code, 1931 (Michie), which is as follows: "Any person, being an officer or employee of a bank, who receives or being an officer thereof, permits an employee to receive money, checks, drafts, or other property as a deposit therein when he has knowledge that such bank is insolvent, shall be guilty of a felony, and upon conviction thereof shall be fined not more than five thousand dollars or imprisoned in the State prison not more than five years, or both. *Provided,* that in any indictment hereunder insolvency shall not be deemed to include insolvency as defined under subsection (d) in the definition of insolvency under section two hundred and sixteen (a). (1921 chap. 4, sec. 85; 1927 chap. 47, sec. 17.)"

C. S., 216(a), in part: "The term 'insolvency' means: (a) when a bank cannot meet its deposit liabilities as they become due in the regular course of business; (b) when the actual cash market value of its assets is insufficient to pay its liabilities to depositors and other creditors; (c) when its reserve shall fall under the amount required by this act, and it shall fail to make good such reserve within thirty days after being required to do so by the commissioner of banks; (d) whenever the undivided profits and surplus shall be inadequate to cover losses of the bank, whereby an impairment of the capital stock is created."

R. S. Gochenour, a witness for the State, who, after proper inquiry, was adjudged an expert by the court, testified, in part: After relating his experience as a public accountant; that he was a member of the firm, or employed by the firm of A. M. Pullen and Company, certified public accountants, and that he was employed by the Banking Department of the State Corporation Commission to examine the books of the bank with the idea of determining its assets and liabilities, and that he did investigate the value of the papers and other property of the bank, whereupon the following questions were asked him: "Q. Did you investigate the value of the papers and other property of the bank? A. Yes, sir. Q. Please state to his Honor and the jury to what extent and how you investigated the value of the assets, the notes and other property of the bank. A. Well, I got the directors together, all of the board of directors—Q. Right there; that includes the defendants here? A. Yes, sir. Q. All of them? A. All of them were there. I got the opinion of them individually and collectively on the value of the various assets, and after that I had the cashier of the other bank in Wake Forest go over the assets and give me his opinion on them and also one other outside disinterested party, taking each asset individually. Q. Please state whether or not you consulted each one of these defendants, to wit, T. E. Bobbitt, J. M. Brewer, S. W. Brewer, T. M. Arrington, and R. M. Squires. A. I am absolutely certain about all of them, except Dr. Squires. I think he was there too, but I am not absolutely certain about him. Q. Mr. Gochenour, from your examination of the bank's books, its assets and liabilities, including all property of the bank and all liabilities of the bank, please state whether or not you formed an opinion at that time as to whether the bank was solvent or insolvent. A. Is it proper for me to ask for a definition of the word 'insolvency,' so there will be no misunderstanding as to what is meant? Q. Keeping in mind the same question that I asked you, and keeping in mind that the law of North Carolina is that a bank is considered insolvent when the actual cash market value of *its* assets *is* insufficient to pay the liabilities to the depositors and other creditors, assuming that to be the correct legal definition of the term 'insolvent,' please answer the question I asked you. (To all the foregoing questions and answers, defendants in apt time objected; objection overruled; defendants excepted.) Q. Go ahead and state whether you had formed an opinion at that time? A. Yes, sir. Q. From your examination of the assets and liabilities, from your examination of this bank's books, and from information you obtained from these very defendants on trial here, please state whether or not, in your opinion, on 26 March, 1929, and also on 25 March, 1929, the Citizens Bank of Wake Forest was solvent

or insolvent. (Objection by all defendants; objection overruled; defendants excepted and assigned error.) A. Yes, sir, it was insolvent. I am basing that opinion upon my examination of what constituted the assets, plus the information gained from these various defendants." The witness, Gochenour, further testified "that the estimate at that meeting was made on each asset separately and all were asked to state fully their opinion in regard to it, and they either concurred openly or did not make any objection to the values as discussed openly at the meeting."

The witness went into detail as to the value of the assets and liabilities of the bank and testified that the bank was insolvent $102,273.19, the total liability of the bank was $185,198.98 and face value of assets was $185,404.65, leaving a net face value of $205.67. The total amount of deposits was $134,988.21. "A certificate of deposit issued to W. R. Powell, Commissioner of the Sinking Fund of the town of Wake Forest was $8,627.24 and accrued interest on that certificate of $138.03. There was a deposit of J. Milton Mangum, treasurer of Wake County for $36,000 and accrued interest on that deposit of $463.89." The witness further testified that the defendant, J. M. Brewer, at the time the bank failed was according to the bank's books indebted to the bank, by both direct and indirect liability in the sum of $18,417.63, to which testimony the defendant objected and excepted and assigned error. The witness further testified that according to the bank's books the defendant had on deposit to his personal account the sum of 23 cents. The witness was permitted to testify that the firm of W. C. Brewer and Company (J. M. Brewer being a partner), had an overdraft in the bank amounting to $3,167.63. That cash in the bank when it closed, according to witness' audit, was $781.90. The witness further testified that as a part of the assets carried on the books of the bank was equity in real estate at $64,076.60. "That all these items of real estate were received by the bank as result of foreclosure proceedings prior to 1 December, 1924; that these items of real estate had been carried on the books of the bank at the amount paid for them at foreclosure proceedings, to wit, $64,076.60, from 1 December, 1924, until the day the bank closed; that there were first mortgages of $44,388.64 ahead of the amount at which the bank bought the land in at foreclosure." The witness further testified that the condition disclosed by the investigation of the books showed that the trouble of the bank was depreciation of land values and insolvency of makers of notes and that the witness did not find a false entry in the bank and did not find a concealment or anything of that kind and that the books were clear and that anyone could have examined the books covering five or ten years and arrived at its condition, and there was no suggestion of any substitution of books and apparently those were the same books that they had had all the time.

C. I. Taylor testified, in part, that most of the assets of the bank had been deposited with certain creditors for their protection; that one bank in Raleigh had $52,000 as security and that J. M. Mangum, county treasurer, had $31,816 as security; that certain assets had been pledged for the payment of certain particular claims against the bank; and that the real estate which the bank had owned had been pledged by first mortgage to secure loan upon it.

We do not think that the foregoing exceptions and assignments of error made by defendant, as above set forth, to the testimony of the State's witness Gochenour, can be sustained. The competency of this kind of evidence is now well settled in this jurisdiction.

In *S. v. Highlower*, 187 N. C., at p. 304, speaking to the subject: "The business of examining banks undoubtedly falls within the classification of trades and pursuits, requiring special skill or knowledge, and hence one versed in its intricacies, we apprehend, should be permitted to speak as an expert." At p. 307: "Applying these principles to the instant case, we think the better practice would have been for Latham and Coursey to have stated the facts or to have detailed the data before drawing their conclusions or giving their opinions in evidence, but we shall not hold it for legal or reversible error that such was not required as a condition precedent to the admission of their opinions in evidence before the jury. *S. v. Felter*, 25 Iowa, 75 *S. v. Foote*, 58 S. C., 218. Speaking to a similar question, in *Commission v. Johnson*, 188 Mass., p. 385, *Bradley, J.*, said: 'By this form of examination no injustice is done, for whatever reasons, even to the smallest details, that an expert may have for his opinion can be brought out fully by cross-examination.'"

Gochenour testified: "I got the directors together, all the board," including defendant J. M. Brewer, except Dr. Squires. "I got the opinion of them individually and collectively on the value of the various assets. . . . Yes, sir, it was insolvent. I am basing that opinion upon my examination of what constituted the assets, plus the information gained from these various defendants."

The defendant contended that the State's witness, Gochenour's, testimony that the bank was insolvent, and his opinion of the aggregate value of its assets, was clearly incompetent and inadmissible. We cannot so hold. The record discloses in regard to the witness for the State, Gochenour, "who after proper inquiry, was adjudged an expert by the court." "Whether or not a witness is an expert is a question for the court below to decide, and if there is any evidence that a witness is an expert, the decision of the court below will not be reviewed on appeal." *Shaw v. Handle Co.*, 188 N. C., at p. 232. "Whether a witness is competent to testify as an expert is a question primarily addressed

to the sound discretion of the court, and his discretion is ordinarily conclusive. *S. v. Wilcox,* 132 N. C., 1120; *Hammond v. Schiff,* 100 N. C., 161." *Liles v. Pickett Mills,* 197 N. C., at p. 773.

The record discloses that Gochenour, "after relating his experience as a public accountant." N. C. Code, *supra,* sec. 7024(a), defines "Practice of Public Accounting" as follows: "A person engaged in the practice of public accounting, within the meaning and intent of this chapter, who offers his or her services to the public as one who is qualified to render professional service in the analysis, verification and audit of financial records and the interpretation of such service through statements and reports." Section 7024(f) makes it unlawful for any person, firm, etc., to engage in the practice of public accounting without receiving certificate of qualification from the State Board of Accounting.

In *Loan Assn. v. Davis,* 192 N. C., at p. 112, speaking to the subject: "Defendant's objections were properly overruled. Both witnesses were expert accountants—one a certified accountant, and the other a bank officer of long experience. It was competent for them to testify as to the effect upon the accounting of these entries. *S. v. Hightower,* 187 N. C., 300." *Bank v. Crowder,* 194 N. C., 331; *S. v. Maslin,* 195 N. C., at p. 540; *S. v. Rhodes, ante,* 101.

The witness Gochenour was asked by defendant: "Q. Did you investigate in making the audit for comparative purposes or any other purpose, reports made by bank examiners to the Corporation Commission as to the condition of this bank at various times, beginning in 1924, and until the bank closed?" (To this question the State objected; objection was sustained; defendant excepted and assigned error.) We think the objection and assignment of error cannot be sustained. Neither the Corporation Commission nor any other agency could give defendant permission to violate the statute. The matter was *res inter alios acta alteri non debet.* Again, the record does not disclose what the answer of the witness would have been, so this Court could determine its relevancy, competency or materiality. *Newbern v. Hinton,* 190 N. C., 111.

The defendant contends that the court erred in charging as to operating the bank without legal reserve. The following is what is complained of: "The State contends that the officers of any bank being operated with its reserve, as provided by statute, short by more than $14,000 when the total amount required is less than $18,000, must know that it was in bad condition; and that that circumstance is such as to put them on notice that the bank was insolvent at that time." This was in the contentions, and if defendant thought it error he should have objected at the time, otherwise the matter is waived. *S. v. Sinodis,* 189 N. C., at p. 571. This might not be direct evidence of insolvency,

but we think it is a pertinent circumstance to go to the jury as bearing upon the knowledge which the defendant had of such insolvency. The exception and assignment of error cannot be sustained.

The defendant contends that the court erred in its definition of the term insolvency: "A bank is considered insolvent, gentlemen, *when the actual cash market value of its assets is not sufficient to pay its liabilities to depositors and other creditors.* That is to say, if you find from the evidence that the total liabilities were $185,198.98, and you find that the total assets, the cash market value, amounted to less than that, then the bank was not solvent. If you take into consideration the land, money on hand, and notes, and find that the market value was less than $185,198.98, then the bank was insolvent. If the land was worth as much as it was carried on the books for, and if the notes were worth as much as they were carried on the books, and the other assets were worth as much as appeared from the books, then, according to the testimony, the assets totaled more than the liabilities; but if the land or the notes, or both together, had an actual market value so as to bring it below $185,198.98, then the bank was insolvent." The part of the charge of the court below set forth in italics is almost the identical language of the statute. The balance is a detailed explanation from the facts in the case. We think the exception and assignment of error untenable.

C. M. Medlin, a witness for the State, testified, in part: "That he was a resident of New Light, Wake County, and a depositor in the bank and that after the closing of the bank he had a conversation with the defendant Brewer about the solvency or insolvency of the bank. Q. Did you have a conversation with him about the solvency or insolvency of the Citizens Bank of Wake Forest? A. Yes, sir, about the bank. Q. When did the conversation take place? A. The 28th day of March. Q. The bank closed when? A. The 26th of March, 1929. Q. Where did that conversation take place? A. Down at Mr. Brewer's office. Q. Was it relative to the solvency or insolvency of the bank? A. Relative to the condition of the bank. . . . Q. Tell what your conversation with Mr. Brewer was? A. I went to see Mr. Brewer on the 28th. Mr. Brewer was sitting in his office. I stepped in and said 'Mr. Brewer, what were you doing to let our bank close?' He said he could not help it, he had carried it as long as he could. I said, 'If you were going to close, why didn't you close before the farmers sold their crops and put the money in?' His reply was that the farmers had no money. I said 'Mr. Brewer, it looks strange to me that you would run this bank on until the farmers had no money and then close.' He said 'We could have carried it a little longer, but it would have caught the hotels if we

had carried it on to the end of the month.' The court: catch the hotels? Witness: Yes, sir, catch the hotels. Q. Go ahead. A. I said 'How long has this bank been in this bad condition?' He said, 'Oh, this bank has been busted for two years or more. I bought too much land. I bought four hundred bales of cotton and stored it.'" The witness further testified, on cross-examination, that Mr. Brewer told him that he had never bought 400 bales of cotton with the bank's money.

At the request of defendant, the court below gave the following charge: "The statute requires that the defendant had actual, not inferential, knowledge of the insolvency of the bank at the time the deposits were received. The court charges you that you cannot convict this defendant upon any assumption that he should have known that the bank was insolvent. It is the duty of the jury *to find from the evidence, beyond a reasonable doubt, that the defendant had actual knowledge of the insolvency of the bank as insolvency is defined to you by the court.* The question of insolvency is one that must be determined by the jury, and the court charges you that the opinion of bank auditors, and examiners is not conclusive on this point, but the jury shall give this testimony such weight and credence in the light of all the evidence as it thinks proper. *The evidence must be sufficient to prove beyond a reasonable doubt that the bank was insolvent and that this fact was actually known to the defendant.*" (Italics ours.)

The court below charged the jury that the defendant had requested the instruction "it is just as much the law as if the court had given them to you on its own initiative."

The court below gave the contentions of the State and defendant fairly and accurately. The court charged: "As to the defendant, J. M. Brewer, if you find beyond a reasonable doubt that the bank was insolvent; that he, as an officer of the bank, had knowledge of its insolvent condition; that, after such knowledge, he permitted Bobbitt or any other officer or employee to receive deposits, knowing of its insolvency, your duty is to return a verdict of guilty. If the evidence does not so satisfy you, beyond a reasonable doubt, you will return a verdict of not guilty. . . . Now, the State has offered certain evidence for you to consider, and from that testimony you will determine the guilt or innocence of the defendant in this case. In that connection, the court wishes to caution you that, while only the State offered evidence, you have no right to consider that fact adversely to the defendant, and it is in no wise to be considered by the jury adversely to the defendant. His failure to offer evidence is not an admission of guilt nor is it a circumstance tending to show that he is guilty, nor is it a circumstance to be considered by the jury adversely to the defendant. On the other hand,

when you come to consider the testimony of the State you do have the right to take into consideration that the evidence offered by the State was uncontradicted. . . .   The court would say further, gentlemen, that you have no right to convict this defendant on account of sympathy for the depositors who lost money in the bank; neither have you a right to acquit him because of sympathy for him or those dependent upon him. It is your duty to find a verdict according to the facts in this case and the interpretation of law as laid down to you by the court."

The court below defined "permit," "market value," mentioned in the statute, to which no exception was taken by defendant. We think the court charged the jury on every phase of the evidence and the law applicable thereto.

It may be noted that the testimony of Medlin, a witness for the State, was uncontradicted. In the conversation he had with the defendant, is the following: *"I said, 'How long has this bank been in this bad condition?' He said 'Oh, this bank has been busted for two years or more. I bought too much land. I bought four hundred bales of cotton and stored it.'"* Defendant did not deny having made this statement.

This Court, under Article IV, section 8 of the Constitution of North Carolina, has the "Jurisdiction to review upon appeal, any decision of the courts below upon any matter of law or legal inference." The question was one of fact for the jury to determine. We find in law no error in the trial by the able judge in the court below.