STATE v. ESLIN HARDING GASKILL.

(Filed 11 April, 1962.)

**1. Criminal Law § 155—**

Where the record fails to show exceptions to the questions or answers, an assignment of error to the admission of evidence does not properly present the question on appeal.

**2. Same; Criminal Law § 139—**

Where the jury has convicted defendant of a capital crime with recommendation of life imprisonment, the Supreme Court, because of the gravity of the offense, may consider an assignment of error notwithstanding the failure of appellant to meet the requirements necessary to present the question under the rules governing appeals.

**3. Criminal Law § 162—**

The admission of testimony of statements made by defendant after his arrest tending to show his presence at the scene and hence his opportunity to have committed the crime will not be held for prejudicial error warranting a new trial, even if partially incompetent, when the facts therein recited are substantially the same as those testified to by other witnesses without objection.

**4. Criminal Law § 71—**

If defendant wishes to challenge testimony of certain admissions made by him as being incompetent on the ground that they were involuntary, the defendant should raise the question by seeking to examine the witness in the absence of the jury upon a *voir dire.*

**5. Same—**

Where there is nothing in the record to show that certain admissions made by defendant were involuntary and defendant had requested no *voir dire* in regard thereto, the compentency of such admissions are not affected by evidence tending to show that an unconnected confession of guilt made by defendant some days thereafter, but not offered in evidence by the State, was involuntary.

**6. Criminal Law § 164½—**

Defendant may not bring out testimony on cross-examination of the State's witnesses and then assert that the admission of the testimony was error, since a defendant cannot invalidate a trial by voluntarily in-

troducing evidence which he might have excluded if the evidence had been offered by the State.

**7. Criminal Law § 42;   Constitutional Law § 33—**

The fact that officers required defendant to surrender for examination the clothing worn by him at the time the crime was alleged to have been committed, and the introduction of evidence that the stains found on the garments were human blood stains, does not invade defendant's constitutional right not to incriminate himself. Constitution of North Carolina, Art. I, sec. 11; Fifth Amendment to the Constitution of the United States.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Cowper, J.,* October 1961 Criminal Term of ONSLOW.

At the May 1961 Term the grand jury returned a true bill of indictment charging defendant with the rape of Caroline Brinson on 23 March 1961.

The first witness at the trial was the asserted victim. She testified: She worked alone in an insurance office near Jacksonville. The area was rural. Defendant came to her office about 12:30 p.m. and inquired about automobile liability insurance, stating his father was negotiating for the purchase of a secondhand automobile. He was given the requested information. Defendant remained in the outer part of the office after receiving the requested information. After the lapse of some time the victim inquired about the automobile that was to be insured. Defendant then left but returned several minutes later, informing the victim there had been delay in completing the purchase of the car, but his father would come shortly and the policy could then be issued. The victim was working in a portion of the office partioned from the part used by customers. Shortly after 4:00 p.m. she felt a hand on her neck and a knife at her throat. She was forced by defendant to go to the toilet where defendant, threatening her with his knife, and over her protests, forced her to have intercourse with him. She was menstruating. She offered to give defendant her money and her car if he would abandon his efforts to have intercourse. After the crime was consummated, they returned to the office, defendant to the outer portion, the victim to her desk behind the partition. Shortly after the crime was committed, three marines came to the office. Witness managed to inform them a crime had been committed by defendant. She was, when they came in, under a severe emotional strain. One left to call the sheriff. In a few minutes the officers responded to the call of the marine. As soon as they arrived, she ran out and told the officers she had been raped by defendant.

The victim was examined by Dr. Dixon within an hour of the alleged assault. He took a smear which under microscopic examination disclosed mobile sperm. The doctor expressed the opinion: ". . . it is likely it would have been recently put there."

The testimony of the marines corroborated that of the victim.

Defendant offered no evidence.

The jury returned a verdict of guilty, recommending life imprisonment. Judgment was entered in conformity with the verdict, and defendant appealed.

*Attorney General Bruton and Assistant Attorney General Rountree for the State.*

*J. Kenneth Lee & Harvey E. Beech by Harvey E. Beech for defendant appellant.*

RODMAN, J. Defendant, in the trial below, moved for nonsuit for that the State's evidence was insufficient to warrant a conviction. He also excepted to the court's summary of the State's contentions. He has abandoned these exceptions by failure to bring them forward in his brief. These exceptions are manifestly without substance.

Defendant claims prejudicial error warranting a new trial because of the admission of asserted incompetent evidence. This evidence consists of (a) statements made to an officer on the night of the alleged crime, and (b) evidence that stains on clothes worn by defendant on the day of the crime were human blood stains.

Defendant's first assignment of error is directed to more than eleven pages of the testimony of Deputy Sheriff Morton. Part of this testimony appears in the record in the narrative. There is nothing to show any exception taken to the questions or answers when that portion of the testimony was given, nor is there exception to the questions or answers to the remaining portion of the testimony. Manifestly, the assignment does not comply with our rules; but, because of the gravity of the crime of which defendant stands convicted, we treat the question argued as though it were properly presented.

Immediately following the witness's statement that defendant had raped her, defendant was taken in custody and carried to the jail in Jacksonville. An ABC officer, present when the accusation was made, described the appearance of the victim and related the statements made by her in the presence of defendant. He further testified that on the way to the jail: "He (defendant) said if he had anything to do with her, he didn't know anything about it, that he had blacked out. . . . He said he first came into the office to see about some in-

surance, that they were going to buy a car, he and his father." This evidence was admitted without objection.

Deputy Sheriff Morton testified immediately after the ABC officer. He testified without objection at the trial and without assertion here of error to the description of events given by Miss Brinson in the presence of defendant. He was then asked if he talked with defendant. He replied, over defendant's exception, that he had talked with defendant about 7:00 p.m. on the date of the asserted crime. Witness said he informed defendant that defendant would probably be charged with the crime of rape, that defendant did not have to make a statement, but was at liberty to do so if he desired, that witness made no threat or promise of reward. Morton then testified that defendant said he went to the insurance office and asked about insurance on a car which his father was to buy, that he went out of the office and was gone some time, talking to his father. He then returned to the office. He was informed as to the amount of the premiums. "He asked her then who could drive the car and she told him anybody could drive it and it would be covered. Said he turned around in the office and started to the door and didn't get out. That he started having an awful headache. That was the last, he said, he remembered until he came to his senses and he was standing in front of her and has his knife in his hand and the lady was standing across from him and she had money in her hand. He remembered she told him to take the money, and she gave him car keys and to go, but he told her he would not take the money and he didn't want money. He said he felt in his pocket and found the car keys. Said, 'I gave her the car keys back and just as I gave them to her a white man and a colored man came in the place.' " (The two referred to as coming in were marines.) "Just as I was giving her the keys, a white boy and a colored boy came in the place. The lady asked if she could help them. She was in a nervous condition and was very white and her hands were shaking, and her voice was trembling."

Witness testified defendant added: "The Sheriff's officers came up and the lady ran out and was crying and told the officers that I was the one and they arrested me and put me in the car. One of the officers went in the place and talked to the lady and came out; and asked why I raped that lady. I told them I did not rape her. He says he remembered, 'I had my knife in my hand and the lady was standing a few feet from me when I came to my senses. I do not remember having any such with the lady. I must have blacked out.' "

Morton's conversation with defendant took place within three or four hours after the crime is alleged to have occurred. His testimony relating the events of the day as given by defendant is substantially

the same as that of the ABC officer whose testimony was given without objection. Neither of these witnesses purports to testify to an admission by defendant of the commission of the crime. Their testimony is that defendant denied knowledge of any wrongful act, asserting he "blacked out." Both testified to admissions by defendant of his presence and hence the opportunity to commit the crime. To that extent the statements of defendant are corroborative of the testimony of the prosecuting witness.

The admission of evidence, even if incompetent which is merely corroborative and repetitious of other evidence given without objection is not such prejudicial error as to warrant a new trial. *S. v. Cauley,* 244 N.C. 701, 94 S.E. 2d 915; *S. v. Bright,* 237 N.C. 475, 75 S.E. 2d 407; *S. v. Rich,* 231 N.C. 696, 58 S.E. 2d 717; *S. v. Oxendine,* 224 N.C. 825, 32 S.E. 2d 648.

Defendant did not ask permission to examine the witness Morton in the absence of the jury to show, if he could, that the statements made on the evening of the 23rd were not in fact voluntary and for that reason incompetent. That is the course he should have pursued if he wished to challenge the evidence offered by the State. *S. v. Outing,* 255 N.C. 468, 121 S.E. 2d 847; *S. v. Davis,* 253 N.C. 86, 116 S.E. 2d 365; *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572.

On cross-examination defendant, apparently for the purpose of discrediting the testimony of the officer or to elicit sympathy for defendant, sought to show: He was taken from the jail in Onslow County where the crime was alleged to have been committed, and carried to the jail in Lenoir, an adjacent county, and subsequently taken to the State's prison in Wake County. Although a warrant charging him with the crime had issued on 24 March while he was in custody, it was not served until after he was returned to Onslow County. He was subjected to repeated questioning during the week he was kept in Raleigh. He was not permitted to communicate with his family or counsel. He finally confessed. He was then returned to Onslow County.

The witness, in response to a question from defendant's counsel concerning defendant's removal from Onslow County, said: "The general public didn't know, and that was the general purpose for taking him from the County, to avoid mob violence."

Notwithstanding defendant developed on his cross-examination that a tape recording was made of the confession while in the State's prison, that confession was not offered in evidence by the State.

Defendant's position is this: The confession made in the State's prison was obtained under duress. Such duress not only makes that confession incompetent but makes any statement by defendant, including those made long prior to the asserted duress, incompetent. In

evaluating defendant's contention, these facts must be borne in mind: (1) There is nothing to indicate duress when the statement of 23 March was made; (2) the State did not offer the confession made in the State's prison, nor did it seek to show that any such confession had been made; (3) there was no finding nor request for a finding with respect to the voluntary nature of the confession.

A defendant cannot invalidate a trial by voluntarily introducing evidence which he might have excluded if that evidence had been offered by the State.

The error now asserted was also alleged as warranting a new trial in *Maynard v. Holder*, 219 N.C. 470, 14 S.E. 2d 415. *Schenck, J.*, said: "Manifestly, such an assignment cannot be sustained. A ruling to the contrary would be to allow appellants to profit by their own wrong." *S. v. Williams*, 255 N.C. 82, 120 S.E. 2d 442; *S. v. Burton*, 256 N.C. 464.

Defendant claims the taking of clothing worn by him on 23 March for chemical analysis, followed by testimony that the stains found on the garments were human blood stains constituted self-incrimination forbidden by North Carolina Constitution, Art. I, sec. 11, and the Fifth Amendment to the United States Constitution. This contention runs counter to State and Federal decisions. No constitutional rights were invaded when the officer required defendant to surrender for examination and analysis the clothing worn by him at the time the crime was alleged to have been committed. *S. v. Grayson*, 239 N.C. 453, 80 S.E. 2d 387; *S. v. Rogers, supra; S. v. Ragland*, 227 N.C. 162, 41 S.E. 2d 285; *S. v. Neville*, 175 N.C. 731, 95 S.E. 55; *S. v. Thompson*, 161 N.C. 238, 76 S.E. 249; *People v. Chiagles*, 142 N.E. 583; 32 A.L.R. 676; *Davis v. State*, 57 A. 2d 289; *Commonwealth v. Statti*, 73 A. 2d 688; *State v. Alexander*, 83 A. 2d 441, cert. den. 343 U.S. 908, 96 L. ed. 1326; *Holt v. United States*, 218 U.S. 245, 54 L. ed. 1021; *Weeks v. United States*, 232 U.S. 383, 58 L. ed. 652; *United States v. Kelly*, 55 F. 2d 67, 83 A.L.R. 122; *McFarland v. United States*, 150 F. 2d 593, cert. den. 90 L. ed. 478; Wigmore on Evidence, 3rd ed., sec. 2263.

No error.

SHARP, J., took no part in the consideration or decision of this case.