STATE OF NORTH CAROLINA v. ARTHUR BARRYMORE CARSON

No. 42

(Filed 28 November 1978)

1. **Criminal Law § 66.9— photographic identification—no impermissible suggestiveness**

    A photographic identification procedure in a rape case was not impermissibly suggestive because the picture of defendant contained a placard on the front indicating his height, weight and other personal information since this single difference between defendant's photograph and the other photographs did not necessarily suggest that defendant was the witness's assailant, and since the witness had ample opportunity to see her assailant at close range on two occasions, the record disclosed no major discrepancies between the witness's initial description of defendant and his actual appearance, the witness never identified anyone except defendant as the man who raped her, and there was no previous failure of identification.

2. **Arrest and Bail § 3.4; Criminal Law § 66.7— legal arrest—photographic identification not tainted by arrest**

    The arrest of defendant for illegal possession of a controlled substance was legal where defendant was taken into custody by officers who sought to serve him with a nontestimonial identification order; defendant fled and was apprehended in a wooded area under conditions which made the officers reasonably believe he was in possession of a weapon; officers searched defendant's person and found that he possessed a quantity of marijuana; and officers then placed him under arrest. Therefore, a photographic identification procedure was not illegal on the ground that defendant was being illegally detained when he was photographed.

3. **Criminal Law § 66.8— arrest for misdemeanor—photographs—use for identification**

    A defendant who was under arrest for a misdemeanor could be photographed by the police, G.S. 15A-502, and such photograph could be used in a photographic identification procedure.

4. **Criminal Law § 66.7— photographic identification—no right to counsel**

    A defendant had no constitutional right to counsel at a photographic identification procedure.

5. **Criminal Law §§ 43.1, 66.7— nontestimonial identification order—right to counsel—arrest for misdemeanor—photographing of defendant**

    Provisions of Art. 14 of G.S. Ch. 15A which require that an order for nontestimonial evidence shall contain a statement that the person is entitled to counsel and to the appointment of counsel if he cannot afford to retain one were inapplicable to the photographing of defendant where officers arrested defendant for the misdemeanor of illegally possessing marijuana while attempting to serve him with a nontestimonial identification order, and defendant could therefore properly be photographed without the aid of the nontestimonial order.

State v. Carson

**6. Jury § 7.6— challenge for cause after juror accepted by both sides**

The trial judge did not err in allowing the State's challenge for cause of a prospective juror who had been passed by the State and defendant because the juror indicated on voir dire by defense counsel that he had known defendant's family all his life and that it would be uncomfortable for him to sit as a juror, since the fact that the juror had been passed by both parties did not affect the court's control of jury selection. Furthermore, even if there were not sufficient grounds to support the allowance of a challenge for cause, defendant was not prejudiced thereby where the jury actually impaneled consisted of persons who were competent and qualified to serve, and defendant failed to exhaust his peremptory challenges.

**7. Criminal Law § 50— testimony that witness "thought" she saw knife**

Testimony that the witness "thought" she saw a knife was competent since the witness was testifying from firsthand knowledge, and the weight to be given the testimony was for the jury.

**8. Rape § 5— use of deadly weapon—first degree rape—sufficiency of evidence**

The State's evidence was sufficient to support a jury finding that defendant used a deadly weapon to overcome the resistance of the victim and that he was guilty of first degree rape where it tended to show that defendant was over sixteen years of age, and where the victim testified: when defendant came up behind her in the parking lot of a shopping mall, she felt something in her back; defendant forced her into her car and drove to another location; after defendant stopped the car, she observed the knife with a blade five to six inches long in his left hand; defendant told her if she did not submit, she would never go home; she tried to escape, physically resisted defendant's advances and pleaded with him not to commit the act, but he placed his private parts into her private parts on two separate occasions.

**9. Constitutional Law § 51— 10 month delay between arrest and trial—speedy trial**

The trial court properly denied defendant's motion to dismiss a rape charge for lack of a speedy trial where defendant was arrested on 2 March 1977; there were three criminal sessions and one mixed session of superior court in the county in 1977; defendant filed a motion for speedy trial on 28 July 1977; defendant's case was not calendared for trial at the July 1977 session at the request of defense counsel; the court ordered that the case be calendared for trial at the next criminal session, but the district attorney could not reach the case at the October 1977 session because of a murder trial; the court entered an order requiring the district attorney to try defendant's case by the April 1978 session of court and providing that the failure to do so would result in a dismissal for failure to prosecute; defendant's case was brought to trial on 16 January 1978; and defendant failed to show the delay created public suspicion against him or deprived him of any means of proving his innocence.

**10. Criminal Law § 169.6— failure of record to show excluded answer**

When the record fails to show what the answer would have been had the witness been permitted to answer a challenged question, the trial judge's ruling cannot be held to be prejudicial error.

**11. Criminal Law § 97.1— rebuttal testimony—recall of witness**

It was within the trial judge's discretion to permit the State to recall a witness for rebuttal testimony.

**12. Criminal Law §§ 97.1, 128— additional testimony—motion for mistrial**

The trial court did not err in denying defendant's motion for a mistrial because a witness was permitted to give additional testimony after the State had rested its case and the court had denied defendant's motion to dismiss, since the court has discretionary power to permit the introduction of additional evidence after a party has rested and even after arguments to the jury have begun; and if defendant was taken by surprise by the additional evidence, he should have moved for a continuance or a recess in order to meet the additional evidence instead of moving for a mistrial.

**13. Rape § 6.1— failure to submit lesser offenses**

The trial court in a rape case did not err in failing to submit the lesser included offenses of assault with intent to commit rape and assault on a female where all the evidence disclosed completed acts of intercourse, and defendant's defense was in the nature of an alibi.

**14. Rape § 6— use of deadly weapon—instructions**

The trial court in a first degree rape case did not err in instructing the jury concerning procurement of the victim's submission by use of a deadly weapon where the evidence showed that when the victim was abducted from a parking lot, she "felt something in her back"; when defendant pulled her in the back seat of her car, she saw a knife about five or six inches long in his left hand; defendant had intercourse with her after she saw the knife; and defendant told her that if she did not submit, she would never go home.

**15. Rape § 6— instruction that knife was deadly weapon—harmless error**

In this prosecution for first degree rape, the jury's verdict could not have been influenced by the court's instruction that a knife is a deadly weapon where the evidence showed that defendant had a five inch knife in his hand when he forced the victim into the back seat of her automobile and that she observed the knife within striking distance as she lay prostrate just before the rape occurred, and the court charged the jury in its final mandate that in order to convict defendant of first degree rape it had to find beyond a reasonable doubt that defendant procured the victim's submission by the use of a deadly weapon.

APPEAL by defendant from *Mills, J.,* 16 January 1978 Criminal Session of DAVIE Superior Court. Defendant was indicted upon a bill of indictment charging him with the first degree rape of Betty Elizabeth Piner. Defendant entered a plea of not guilty, and the jury returned a verdict of first degree rape. Defendant appealed from judgment imposing a sentence of life imprisonment.

The facts pertinent to decision of this case will be stated in our consideration of the assignments of error.

*Rufus L. Edmisten, Attorney General, by David S. Crump, Special Deputy Attorney General, and Tiare Smiley Farris, Associate Attorney, for the State.*

*William G. Ijames, Jr., and Wade H. Leonard, Jr., for defendant appellant.*

BRANCH, Justice.

Defendant assigns as error the trial judge's denial of his motion to suppress the prosecuting witness's identification testimony and the court's admission of evidence, over objection, concerning pretrial identification procedures.

Pursuant to defendant's motion to suppress testimony of the prosecuting witness's identification of defendant as her assailant, Judge Mills conducted a voir dire hearing in the jury's absence.

On voir dire, Betty Elizabeth Piner testified that on 17 September 1975 at about 6:00 p.m., she was unlocking her automobile which was parked in Hanes Mall in Winston-Salem, North Carolina, when she was forced into the car by a black man. She was only a foot away from this person when she was forced into the car, and there was enough light for her to see him. He held her down on the seat and drove to a place unknown to her where he stopped the car and forced her to lie in the front seat with her head on the driver's side. By this time it was dark, but as her head pressed against the door, the interior lights came on. She stated: "The lights were on for about a minute when he first raped me . . . I did at this time get a good look at the individual involved." The witness then identified her assailant as defendant, Arthur Barrymore Carson. She testified that she was in defendant's presence for two and one-half to three hours.

Within a week, she was shown six pictures of different black men by Sergeant Hartsoe and another police officer. The photographs were handed to her in a stack, and she put them on the table. After ten or fifteen minutes, she picked out a photograph of defendant and told the officers she believed this was the man who raped her. She did not look at the back of the photograph of defendant, but she testified that it differed from

the other photographs in that "it had a plate or whatever in front of him." She stated that all the photographs were of black men of about the same age and that the police officers made no suggestions concerning the identification other than to request that she look at the photographs.

In March, 1977, she observed another series of photographs at the Davie County jail in Mocksville, North Carolina. At that time, Sergeant Hartsoe and another police officer placed on a table five or six recently developed photographs. The officers without any other comment asked her to see if she recognized anybody in this series of photographs. This group of photographs consisted of head shots of black males, all of about the same age and size. At that time, she identified the photograph of defendant as being a likeness of the man who raped her. She stated:

> . . . I believe I could recognize the defendant today if I had not seen the photographs nor if I had seen him in District Court in the preliminary hearing.

The State also offered the testimony of the police officers which tended to corroborate the testimony of the witness Piner concerning the pretrial photographic procedures except one officer's testimony failed to corroborate her as to the *place* where the first group of photographs was shown. The State's evidence also tended to show that defendant had been served with a nontestimonial identification order and was in custody upon a charge of illegal possession of a contraband substance when the photograph which appeared in the second group was taken. Before his photographs were taken, defendant was advised of his right to have a lawyer present and that one would be furnished if he could not afford to hire one. There was evidence tending to show that defendant gave his consent for the taking of his photograph.

During the voir dire, counsel agreed upon and placed into evidence the following stipulation:

> MR. FULLER: We have stipulations we would like to get into the record. It is stipulated by and between the State of North Carolina and counsel for Mr. Carson that the in-court identification which occurred at the preliminary hearing in this case on the 18th of April, 1977, was conducted at the re-

quest of defendant's counsel, Mr. Ijames, that defendant's counsel, Mr. Ijames selected each of the individuals that appeared in that lineup with the exception of the defendant who was there because he was in court for his preliminary hearing, that Mrs. Piner selected defendant from this group of black males in this lineup, that at the time the selection was made, defendant was not seated beside of counsel at the defense table, but in the group of several black males, is that right?

MR. IJAMES: Yes, sir.

At the conclusion of voir dire evidence, the trial judge found facts consistent with the facts above summarized and concluded:

NOW, THEREFORE, THE COURT FINDS AND DETERMINES that from clear and convincing evidence and beyond a reasonable doubt that the in-Court identification of the defendant, Arthur Barrymore Carson, by the prosecuting witness, Betty Elizabeth Piner, is of independent origin based solely on what she saw at the time of her abduction and rape, and does not result from out of Court viewing of any photographs or any pretrial identification procedures and conducive to mistaken identification . . . .

Based on his findings and conclusions, the trial judge thereupon denied defendant's motion to suppress the identification testimony of the witness Piner.

In the landmark case of *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968), the United States Supreme Court held that convictions based on eyewitness identification will not be set aside because of an improper pretrial identification by photograph unless the "photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

We set forth in *State v. Knight*, 282 N.C. 220, 192 S.E. 2d 283 (1972), certain factors to be applied in employing the *Simmons* test:

(1) The manner in which the pretrial identification was conducted; (2) the witness's prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any descrip-

tion given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification.

Accord: *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970), *cert. denied,* 400 U.S. 946.

[1]  Defendant argues that the first photographic identification procedure was impermissibly suggestive because the picture of defendant contained a placard on the front indicating his height, weight and other personal information. At this point, it must be borne in mind that defendant did not move to suppress the evidence of the pretrial identification techniques, and we are not presented with a question as to the effect of such a photograph upon a jury verdict as was the case in *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892 (1970). This single difference between defendant's photograph and the other photographs included in the procedure did not necessarily suggest that defendant was the witness's assailant. Further, defendant's argument is diluted by the fact that the witness had ample opportunity to see her assailant at close range on two occasions. The record discloses no major discrepancies between the witness's initial description of defendant and his actual appearance. The witness never identified anyone except defendant as the man who raped her. There was no previous failure to identify defendant although the first identification was somewhat equivocal. However, the witness explained the reason that her identification was not positive and showed a commendable desire to be certain by requesting that she be shown a clearer photograph or be permitted to view a lineup.

[2]  A second set of photographs was shown to the witness Piner in 1977 at the Davie County jail in Mocksville, North Carolina. At that time, she positively identified a photograph of defendant as a likeness of the man who raped her. Defendant first argues that this procedure was illegal because he was being illegally detained. Defendant was taken into custody by officers who sought to serve him with a nontestimonial identification order. Defendant fled and was apprehended in a wooded area under conditions which made the officers reasonably believe that he was in possession of a

weapon. Therefore, before serving the order, they made a search of his person and found that he was carrying a quantity of marijuana. The officers immediately warned him of his rights and placed him under arrest for illegal possession of a controlled substance. Under the circumstances of the case, the arrest and ensuing search were legal. G.S. 15A-502 provides:

§ 15A-502. *Photographs and fingerprints.* — (a) A person charged with the commission of a felony or a misdemeanor may be photographed and his fingerprints may be taken for law-enforcement records only when he has been:

(1) *Arrested* or committed to a detention facility, or

\*     \*     \*

(e) Fingerprints or photographs taken pursuant to subsection (a) may be forwarded to the State Bureau of Investigation, the Federal Bureau of Investigation, or other law-enforcement agencies. [Emphasis added.]

[3] Defendant was under arrest for a misdemeanor at the time he was photographed. Clearly, it was the intent of the Legislature that such photographs could be used for any law enforcement purpose.

[4] Defendant also argues that the second photographic procedure was illegal because he did not waive his right to presence of counsel. We find no merit in this contention.

Handwriting samples, blood samples, fingerprints, clothing, hair, voice demonstrations, *even the body itself,* are identifying physical characteristics and are outside the protection of the Fifth Amendment privilege against self-incrimination. Such pretrial police investigative procedures do not constitute a "critical" stage of the trial at which the accused is entitled to the assistance of counsel as guaranteed by the Sixth Amendment and made obligatory upon the states by the Fourteenth Amendment. *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581 (1968), *cert. denied,* 396 U.S. 934; *State v. Gaskill,* 256 N.C. 652, 124 S.E. 2d 873 (1962); *Schmerber v. California,* 384 U.S. 757, 16 L.Ed. 2d 908, 86 S.Ct. 1826 (1966); *Gideon v. Wainwright,* 372 U.S. 335, 9 L.Ed. 2d 799, 83 S.Ct. 792 (1963).

We note that the United States Supreme Court held in the recent case of *United States v. Dionisio,* 410 U.S. 1, 35 L.Ed. 2d 67, 93 S.Ct. 764 (1973), that a directive by a federal grand jury to a witness to furnish voice exemplars did not violate the witness's Fourth Amendment rights. In so holding, the Court stated:

> In *Katz v. United States, supra,* we said that the Fourth Amendment provides no protection for what "a person knowingly exposes to the public, even in his own home or office . . . ." 389 US, at 351, [19 L.Ed. 2d 576]. The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world. . . .

[5] We are advertent to the provisions of Article 14 of Chapter 15A of the General Statutes which require that an order for nontestimonial evidence shall contain a statement that the person is entitled to counsel at the procedure and to appointment of counsel if he cannot afford to retain one. In our opinion, the provisions of this article of the General Statutes are not here applicable since defendant was legally arrested on a misdemeanor charge, and under these circumstances, he could be photographed without the aid of the nontestimonial order.

When the two pretrial photographic procedures and the lineup, which was arranged by and held in the presence of defendant's counsel, are considered either singly or collectively, we conclude that the pretrial identification procedures were not so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Even had the pretrial procedures been impermissibly suggestive, the finding by the trial judge that the in-court identification of defendant was of independent origin was based on clear and convincing evidence heard on a properly conducted voir dire hearing and is, therefore, binding on this Court. *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974), *death sentence vacated,* 428 U.S. 902; *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974).

We hold that the trial judge correctly denied defendant's motion to suppress identification testimony of the prosecuting witness and correctly admitted evidence concerning the pretrial identification procedures.

[6] Defendant assigns as error the ruling of the trial judge which permitted the State to challenge a juror who had been passed by the State and defendant.

After prospective juror Jones had been passed by the State, he indicated on voir dire by defense counsel that he had known defendant's family all his life and that it would be uncomfortable for him to sit as a juror. The trial judge was not in the courtroom at that time, and the jury selection continued. When the judge returned, he was informed of the statements made by prospective juror Jones but made no ruling at that time. After the jury selection was completed, but before the jury was impaneled, the court allowed the State's challenge for cause as to prospective juror Jones. Thereafter the jury selection was completed, and the jury was impaneled.

A trial judge, in the exercise of his duty to see that a competent, impartial jury is impaneled, may in his discretion excuse a prospective juror even without challenge by either party. Decision as to a prospective juror's competency to serve is a matter resting in the trial judge's sound discretion and is not subject to review unless accompanied by some imputed error of law. The fact that the juror has been passed by both parties to the cause does not affect the court's control of jury selection. *State v. Waddell,* 289 N.C. 19, 220 S.E. 2d 293 (1975), *death sentence vacated,* 428 U.S. 904; *State v. Wetmore,* 287 N.C. 344, 215 S.E. 2d 51 (1975), *death sentence vacated,* 428 U.S. 905. Further, assuming arguendo that there were not sufficient grounds to support a challenge for cause, defendant would not have been entitled to a new trial so long as the jury as actually impaneled consisted of persons who were competent and qualified to serve. This is especially true when defendant has not exhausted his peremptory challenges. *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), *rev'd as to death sentence,* 403 U.S. 948. This record does not show that defendant exhausted his peremptory challenges or that the jury as impaneled contained anyone who was not competent and qualified to serve. This assignment of error is overruled.

[7] Defendant contends that the court erred by permitting the prosecuting witness to testify that she *thought* she saw a knife. This testimony was competent. The witness was testifying from her own firsthand knowledge, and the weight to be given this testimony was for the jury. *State v. Haney,* 263 N.C. 816, 140 S.E. 2d 544 (1965).

[8] Defendant next assigns as error the trial court's denial of his motion to dismiss the charge of first degree rape.

G.S. 14-21 provides:

Every person who ravishes and carnally knows any female of the age of 12 years or more by force and against her will, or who unlawfully and carnally knows and abuses any female child under the age of 12 years, shall be guilty of rape, and upon conviction, shall be punished as follows:

(a) First-Degree Rape—
(1) If the person guilty of rape is more than 16 years of age, and the rape victim is a virtuous female child under the age of 12 years, the punishment shall be death; or

(2) If the person guilty of rape is more than 16 years of age, and the rape victim had her resistance overcome or her submission procured by the use of a deadly weapon, or by the infliction of serious bodily injury to her, the punishment shall be death.

(b) Second-Degree Rape—Any other offense of rape defined in this section shall be a lesser-included offense of rape in the first degree and shall be punished by imprisonment in the State's prison for life, or for a term of years, in the discretion of the court.

Defendant first argues that the State has failed to produce evidence tending to show that he used a deadly weapon to overcome the resistance of the prosecuting witness.

Betty Elizabeth Piner testified that when defendant came up behind her in the parking lot that she felt something in her back; that after he stopped the car in the cornfield and put her in the back seat of the automobile, she observed a knife with a blade about five or six inches long in his left hand, and at that time,

defendant told her that if she did not submit, she would never go home. She struggled and tried to push defendant away. She hit him, kicked him and asked him to stop. She tried to escape on two occasions "but he was just very strong, there was nothing I could do." She testified that she was afraid of defendant, and she did not know what he might do. The prosecuting witness further testified that defendant placed his private parts into her private parts on two separate occasions. The State also offered evidence which tended to show that defendant was over sixteen years of age. Thus, when considered in the light most favorable to the State and giving the State the benefit of every reasonable inference to be drawn from the evidence, there was competent evidence to support the allegations in the bill of indictment which charged defendant with first degree rape. *State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974); *State v. Block*, 245 N.C. 661, 97 S.E. 2d 243 (1957). Neither do we find merit in defendant's argument that the charges of rape should have been dismissed because there was no evidence that the prosecuting witness did not consent to the sexual intercourse. Examination of the evidence recited above permits reasonable inferences that the prosecuting witness was forcibly abducted and that she tried to escape and physicially resisted defendant's advances and pleaded with him not to commit the act. Further, the evidence would permit a reasonable inference that the prosecuting witness submitted because she feared for her life and safety.

[9] Defendant assigns as error the trial judge's denial of his motions to dismiss the charges against him for lack of a speedy trial.

In *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972), we considered a similar question and there stated:

The constitutional right to a speedy trial protects an accused from extended imprisonment before trial, from public suspicion generated by an untried accusation, and from loss of witnesses and other means of proving his innocence resulting from passage of time. Whether defendant has been denied the right to a speedy trial is a matter to be determined by the trial judge in light of the circumstances of each case. The accused has the burden of showing that the delay was due to the State's wilfulness or neglect. Unavoidable delays and delays caused or requested by defendant do not

State v. Carson

violate his right to a speedy trial. Further, a defendant may waive his right to a speedy trial by failing to demand or to make some effort to obtain a speedier trial. *State v. Ball*, 277 N.C. 714, 178 S.E. 2d 377; *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309; *State v. Lowry* and *State v. Mallory*, 263 N.C. 536, 139 S.E. 2d 870. The constitutional right to a speedy trial prohibits arbitrary and oppressive delays by the prosecution. *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274. But this right is necessarily relative and is consistent with delays under certain circumstances. *Beavers v. Haubert*, 198 U.S. 77, 49 L.Ed. 950, 25 S.Ct. 573.

In instant case, defendant was taken into custody on 2 March 1977. On 28 July 1977, he filed a motion for a speedy trial. Judge Robert Collier signed an order requiring the case to be *calendared* for trial at the next criminal term of Superior Court in Davie County. In his order, Judge Collier found that pursuant to a request of defendant's attorney, the case had not been calendared at the July, 1977, Session of Davie Superior Court. On 28 October 1977, the court entered an order pursuant to a motion by defense counsel for a speedy trial in which it was indicated that the district attorney could not reach defendant's case at the October, 1977, Session of Davie Superior Court because of a murder trial. In the same order, the court ordered defendant's counsel to submit a written motion for dismissal because of a lack of a speedy trial. The written motion was filed, and after a hearing, an order was entered requiring the district attorney to place defendant's case on the caledfrom for trial by the April, 1978, Session of Davie Superior Court and provided that failure to do so would result in a dismissal from failure to prosecute. In the year 1977, there were three Criminal Sessions of Davie Superior Court and one mixed session. Defendant was brought to trial on 16 January 1978.

Defendant has failed to show that there was any arbitrary, purposeful or oppressive delay by the State. Neither does he show that the delay of approximately ten months created public suspicion against him or deprived him of any means of proving his innocence. Under the circumstances of this case, the trial judge correctly overruled defendant's motion to dismiss for lack of speedy trial.

[10] Defendant argues that the trial judge committed prejudicial error by excluding testimony describing an individual by the name of Lee Fleming.

The record discloses the following:

Q. Would you describe the best you could an individual by the name of Lee Fleming in 1975?

OBJECTION. SUSTAINED.

EXCEPTION #12

Q. Tell us what Lee Fleming looked like.

OBJECTION. SUSTAINED.

EXCEPTION #13

Q. Would you tell us how tall Lee Fleming was?

OBJECTION. SUSTAINED.

EXCEPTION #14

We do not know what the witness would have said in response to defense counsel's questions. It is the rule in this jurisdiction that when the record fails to show what the answer would have been had the witness been permitted to answer the challenged question, the trial judge's ruling cannot be held to be prejudicial error. *State v. Curry*, 288 N.C. 660, 220 S.E. 2d 545 (1975); *State v. Brewer*, 202 N.C. 187, 162 S.E. 363 (1932).

[11, 12] Defendant's contention that it was error to recall the witness Stanley for rebuttal testimony is without merit. It is within the trial judge's discretion to admit evidence on rebuttal which would have been otherwise admissible, and the appellate courts will not interfere absent a showing of gross abuse of discretion. No such abuse is shown here. *State v. Foster*, 284 N.C. 259, 200 S.E. 2d 782 (1973). Neither do we find substance in defendant's contention that the trial judge erred by denying his motion for a mistrial because the witness Williams was permitted to testify as a surprise witness and give additional testimony after the State had rested its case and after the court had denied defendant's motion to dismiss.

A trial judge has discretionary power to permit the introduction of additional evidence after a party has rested. *State v. Coffey,* 255 N.C. 293, 121 S.E. 2d 736 (1961); *State v. Perry,* 231 N.C. 467, 57 S.E. 2d 774 (1950). This is so even after arguments to the jury have begun. *State v. Jackson,* 265 N.C. 558, 144 S.E. 2d 584 (1965). If defendant had been taken by surprise by the additional evidence, he should have moved for a continuance or a recess in order to prepare to meet the additional evidence instead of making a motion for a mistrial. *State v. Coffey, supra.*

**[13]** Defendant assigns as error the failure of the trial judge to submit to the jury the lesser included offenses of assault with intent to commit rape and assault on a female.

The necessity for instructing on lesser included offenses of the crime charged arises only when there is evidence from which the jury could find that such included crime of lesser degree was committed. *State v. Dawson,* 281 N.C. 645, 190 S.E. 2d 196 (1972); *State v. Bryant,* 280 N.C. 551, 187 S.E. 2d 111 (1972); *State v. Carnes,* 279 N.C. 549, 184 S.E. 2d 235 (1971). In the case *sub judice,* all the evidence discloses completed acts of intercourse. Defendant's defense was in the nature of alibi. Thus, there was no evidence to warrant submitting to the jury the lesser included offenses of assault with intent to commit rape and assault on a female.

**[14]** Defendant takes the position that the trial judge erred in charging the jury concerning the use of a deadly weapon.

Under this assignment of error, defendant first argues that the charge was erroneous because the evidence does not show that Betty Elizabeth Piner's assailant overcame her resistance or obtained her submission by the use of a deadly weapon.

In *State v. Thompson,* 290 N.C. 431, 226 S.E. 2d 487 (1976), this Court, speaking through Chief Justice Sharp, stated:

> The decision in *Dull* is authority for the proposition that a deadly weapon is used to procure the subjugation or submission of a rape victim within the meaning of G.S. 14-21(a)(2) when (1) it is exhibited to her and the defendant verbally, by brandishment or otherwise, threatens to use it; (2) the victim knows, or reasonably believes, that the weapon remains in the possession of her attacker or readily accessible to him;

and (3) she submits or terminates her resistance because of her fear that if she does not he will kill or injure her with the weapon. In other words, the deadly weapon is used, not only when the attacker overcomes the rape victim's resistance or obtains her submission by its actual functional use as a weapon, but also by his threatened use of it when the victim knows, or reasonably believes, that the weapon is readily accessible to her attacker or that he commands its immediate use.

The facts in this case show that when the prosecuting witness was abducted from the parking lot, she "felt something in her back," and that when defendant pulled her in the back seat of the car, she saw a knife which was about five or six inches long in his left hand. She testified, "He did place his private parts in my private parts in the back seat. That was after I saw the knife." Defendant told her that if she did not do what he wanted her to do, she would never go home, and this statement was made at a time when the knife was instantly accessible to him. This evidence permits an inference that when the second rape was committed that defendant procured the victim's submission by the use of a deadly weapon.

[15] Defendant also argues by this assignment of error that the trial judge committed prejudicial error by charging that a knife is a deadly weapon.

Some weapons, under particular circumstances, such as guns, revolvers, pistols and swords when used in striking distance of the victim are so clearly lethal that the court may declare them deadly weapons as a matter of law. Other weapons, including a knife, may be declared deadly weapons according to the manner in which they were used. In the latter class, whether the weapon is lethal is ordinarily a question for the jury. 79 Am. Jur. 2d, *Weapons and Firearms*, Section 1, page 4.

Here the judge in his final mandate to the jury on a charge of first degree rape charged "that if you find from the evidence and beyond a reasonable doubt that on or about September 17, 1975, Arthur Barrymore Carson . . . had sexual intercourse with Betty Elizabeth Piner without her consent . . . and procured her submission by the use of a deadly weapon, a knife, it would be your duty to return a verdict of guilty of first degree rape. . . ."

The evidence shows that defendant had a five inch knife in his hand when he forced the prosecuting witness into the back seat of the automobile and that she observed the knife within striking distance as she lay prostrate just before the rape occurred. Under these circumstances, we do not believe that the jury was misled or that its verdict was influenced by the court's initial instruction that a knife was a deadly weapon.

Finally, defendant contends that the trial judge expressed an opinion as to defendant's guilt in his charge to the jury. He avers that the "tone" of the instructions conclusively charged that defendant was the one who committed the assault on Betty Elizabeth Piner. We disagree. Suffice it to say that we have read the entire charge and find nothing which expresses an opinion on the part of the court that defendant was guilty of the crime charged.

We have carefully examined defendant's assignments of error and find nothing which warrants that the verdict returned or the judgment entered be disturbed.

No Error.