STATE OF NORTH CAROLINA v. WILLIAM CHARLES DANIELS

No. 73

(Filed 6 May 1980)

1. Criminal Law § 66.16 — photographic identification — in-court identification of independent origin

The trial court did not err in denying defendant's motion to suppress identification testimony by the alleged victim and an eyewitness of the armed robbery with which defendant was charged, since there was ample evidence to support the trial court's conclusion that the two witnesses had ample opportunity to observe the perpetrator of the robbery at the well lighted crime scene; subsequent thereto nothing occurred which would indicate any suggestion by any person which would color identification of defendant's photograph which had been placed in a mug book with other photographs; the photographic identification of defendant by both of the witnesses was of independent origin based solely upon what each of them observed at the time of the robbery and was not the result of any confrontation otherwise which might have been suggestive or conducive to mistaken identification; and the photographic lineup procedure was not so suggestive as to lead to irreparable mistaken identification.

State v. Daniels

2. **Constitutional Law § 53— eighteen months between arrest and trial—delay caused by defendant—no denial of speedy trial**

The trial court did not err in denying defendant's motion to dismiss for lack of a speedy trial, though eighteen months elapsed between defendant's arrest and trial, since most of the delay was caused by defendant and his counsel who filed numerous pretrial motions, and since defendant did not show that he was prejudiced by the delay and did not complain about the delay until sixteen months after commission of the crime charged when he filed his motion to dismiss.

3. **Criminal Law § 34.5— stealing of gas—unrelated criminal act—admissibility to show identity**

There was no merit to defendant's contention in a homicide prosecution that the trial court erred in allowing into evidence testimony concerning the stealing of gas which was unrelated to the case under consideration, since the witness in question made no reference to the gasoline having been stolen, and since the testimony was relevant to the murder charge as it tended to show that a person meeting the description of the murder victim was seen in an automobile similar to that driven by defendant a short while prior to the robbery and the time when the victim was found shot in the head.

4. **Robbery § 4.3— armed robbery—sufficiency of evidence**

The trial court did not err in denying defendant's motion to dismiss the charge of armed robbery where the victim and an eyewitness were unequivocal in their identification of defendant as the perpetrator; several rolls of coins and bundles of bills were taken during the robbery; defendant's abandoned car was found shortly after the robbery with rolls of coins therein; defendant was apprehended near the scene of the crime while he was attempting to flee on foot; and when apprehended defendant had $153 in his pockets, including several bundles of bills like those taken in the robbery.

5. **Homicide § 21.1— shooting of partner in crime—defendant as murderer—insufficiency of evidence**

Evidence was insufficient to support defendant's conviction for the murder of his partner in crime which took place while both were fleeing through a wooded area where the evidence tended to show that the two ran into the woods together, but the victim was not shot at close range; there were numerous police officers with weapons in the area at the time the victim was shot; although the State showed that many of the officers did not fire a weapon, it was not clear that no officer fired one; the victim was in a thickly settled residential area and was near an outbuilding within forty feet of one residence when he was shot; and there was no evidence that someone in that residence or in any of the other nearby residences did not fire a shot.

6. **Criminal Law § 171.1— defendant convicted of two charges—one conviction improper—single sentence imposed**

Where defendant was properly convicted of armed robbery but improperly convicted of voluntary manslaughter, and the court, for the purpose of sentencing, consolidated the charges and imposed a sentence of life imprisonment, the judgment need not be disturbed, since the single sentence imposed

---

State v. Daniels

---

was within the parameters of the punishment authorized for the crime of armed robbery.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by defendant from *Preston, J.*, 20 August 1979 Criminal Session of CUMBERLAND Superior Court.

Upon pleas of not guilty defendant was tried on a bill of indictment charging him with (1) the murder of Jimmy Carl Bullard and (2) the armed robbery of Donald Ray Jones. The jury returned verdicts finding defendant guilty of involuntary manslaughter and armed robbery. The court consolidated the charges for purpose of judgment and imposed a life sentence.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Norma S. Harrell, for the state.*

*Public Defender Mary Ann Tally and Assistant Public Defender Gregory A. Weeks for defendant-appellant.*

BRITT, Justice.

We find no merit in any of defendant's assignments of error in the armed robbery case. However, we conclude that the trial court erred in denying defendant's motion to dismiss the murder charge because of insufficiency of evidence.

[1] Defendant contends first that the trial court erred in denying his motoin to suppress any identification of him by Jones, the alleged victim of, and Driggers, an eyewitness to the alleged armed robbery. We reject this contention.

The alleged robbery took place on 26 February 1978. On 24 July 1978 defendant filed a motion asking the court to suppress identification evidence by Jones and Driggers. A hearing on the motion was held by Judge Herring at the 25 September 1978 Criminal Session of the Court. Following testimony by investigating Officer Pearson, Jones and Driggers, the court made findings of fact summarized in pertinent part as follows (numbering ours):

1. The Service Distributing Company located on West Hudson Street in Fayetteville was the victim of an armed robbery at about 1:30 a.m. on 26 February 1978. Shortly thereafter defendant was taken into custody and detained at the Cumberland County

Law Enforcement Center in connection with the alleged robbery. Driggers and Jones were present at the time of the robbery. Both of them had ample opportunity to observe the white male who had in his hand a gun which was used to accomplish the robbery. There was adequate lighting both inside and outside of the building where the robbery occurred for both witnesses to clearly and plainly observe the perpetrator of the robbery.

2. Both of said witnesses were transported separately to the Law Enforcement Center and placed in separate rooms apart from the defendant. They were not afforded an opportunity to observe the defendant who was then in custody in another part of the building.

3. At approximately 2:30 a.m. defendant was photographed in the office of Detective Sam Pearson who had been provided with descriptions of the person who committed the robbery as given by Jones and Driggers. Detective Pearson took the photograph of defendant which was made by him and placed it in a mug book along with other photographs of approximately 400 persons which included males and females and persons of the white, black and Indian races. Approximately 175 to 200 white males were pictured in the book.

4. Separated from each other, Jones and Driggers were asked to view photographs in the book and indicate whether they saw anyone they had seen before. Jones viewed some 30 to 35 photographs before he came to and pointed out defendant's photograph as being that of the person who committed the robbery. Driggers viewed some 10 or 15 photographs before he came to defendant's picture and identified him as being the one who committed the robbery.

5. The general description given by both Jones and Driggers generally fit the description and appearance of defendant, although not "necessarily accurate in every respect, such as weight and height." The photographic lineup was not so suggestive as to taint an identification of defendant's photograph by Jones or Driggers.

The court concluded as a matter of law that Jones and Driggers had ample opportunity to observe the perpetrator of the robbery; that subsequent thereto nothing appears to have occurred that would indicate any suggestion by any person which would

State v. Daniels

color identification of defendant's photograph which had been placed in a mug book with other photographs; that the photographic identification of defendant's picture by both of said witnesses was of an independent origin based solely upon what each of them observed at the time of the robbery and "is not the result of any confrontation otherwise which might have been suggestive or conducive to a mistaken identification;" and that the photographic lineup procedure was not so unnecessarily suggestive or inducive as to lead to irreparable mistaken identification to the extent that defendant would thereby be denied due process of law.

The court then ordered that defendant's motion to suppress be denied and held that evidence of the photographic lineup and the identification of defendant would be competent evidence in the trial of this case.

This court has held many times that an in-court identification will not be excluded because of pretrial photographic identification procedures unless those procedures were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *E.g., State v. Knight,* 282 N.C. 220, 192 S.E. 2d 283 (1972), *accord, State v. Carson,* 296 N.C. 31, 249 S.E. 2d 417 (1978); *State v. Legette,* 292 N.C. 44, 231 S.E. 2d 896 (1977). The trial court's findings and conclusions in the case at hand that the photographic lineup was not so suggestive as to taint an identification of defendant's photograph by Jones and Driggers, that the identification was of an independent origin based solely upon what each of them observed at the time of the robbery, and that the photographic lineup procedure was not so unnecessarily suggestive or inducive as to lead to irreparable mistaken identification are fully supported by competent evidence; therefore, they are binding on this court. *State v. Sweezy,* 291 N.C. 366, 230 S.E. 2d 524 (1976); *State v. Davis,* 290 N.C. 511, 227 S.E. 2d 97 (1976).

[2] The trial court did not err in denying defendant's motion to dismiss for lack of a speedy trial. Inasmuch as this case arose before the effective date of Chapter 787 of the 1977 Session Laws, sometimes referred to as the Speedy Trial Act, our discussion of this assignment relates solely to defendant's constitutional right to a speedy trial.

The main factors to be considered in determining whether a defendant has been denied his constitutional right to a speedy trial are: (1) the length of the delay; (2) the reason for the delay; (3) prejudice to the defendant; and (4) waiver by the defendant. 3 Strong's N.C. Index 3d, Constitutional Law § 50 and cases therein cited. A defendant's constitutional right to a speedy trial is not violated unless the delay is wilful or the result of negligence on the part of the prosecution; and the accused has the burden of showing that the delay was due to the state's wilfulness or neglect. *Id.* § 52; *State v. Smith,* 289 N.C. 143, 221 S.E. 2d 247 (1976); *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969).

Although there was a period of approximately eighteen months between the date of defendant's arrest and his trial, the record reveals that a substantial part of the delay was caused by defendant or his counsel. Numerous pretrial motions were filed by defendant and they had to be scheduled and heard. For a considerable period of time defendant's counsel was engaged in the trial of other cases and would not agree for defendant to be represented by other counsel. Defendant failed to establish that he was prejudiced by the delay, and he did not complain about the delay until 17 August 1979 when he filed his motion to dismiss.

[3] Defendant states his third contention thusly: "The trial court erred in allowing into evidence testimony concerning the stealing of gas which was totally unrelated to the case under consideration by the jury."

This contention relates to the testimony of state's witness Clyde Smithwick. Before he was allowed to testify before the jury, the court conducted a *voir dire* in the absence of the jury. At that time, the witness testified that on the night in question he was working at a Gulf Station; that a tan Ford Mustang occupied by two persons drove up to the outside pumps; that the passenger got out of the car and put gas into it; that the car left without anyone paying for the gas; that he wrote down a description of the automobile and the license number; and that he reported the theft of gasoline to the police and gave them the information regarding the car.

When he testified before the jury, Smithwick carefully avoided making any statement that the gas was stolen. He testified that a tan Mustang came to his station between 12:00

and 1:00 a.m.; that the passenger, whom he described, got out of the car and put $5.00 worth of gasoline into it; that he wrote down the license number of the car and that he later called the sheriff's department.

Clearly the testimony given to the jury was free from error. The contention as stated by defendant is inaccurate as the witness in his testimony before the jury made no reference to the gasoline having been stolen. The testimony was relevant to the murder charge as it tended to show that a person meeting the description of the murder victim was seen in an automobile similar to that driven by defendant a short while prior to the robbery and the time when Bullard was found shot in his head. ". . . [E]vidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." 1 Stansbury's North Carolina Evidence § 77 (Brandis Rev. 1973).

Defendant's fourth contention is that the trial court erred in denying his motion to dismiss the charges because of insufficient evidence. The evidence presented by the state is summarized in pertinent part as follows:

At around 4:00 p.m. on 25 February 1978 defendant, Jimmy Carl Bullard and Walter Elder, Jr., were together at a bar in the eastern section of Fayetteville. Elder owned a 1968 gold colored Mustang. The three of them shot pool and drank beer. Later on they went to two other clubs where they shot pool and drank beer. Defendant drove the car from one club to the other because Elder did not have a driver's license. Thereafter, defendant and Elder went "downtown" where Elder was arrested for carrying a concealed weapon and public drunkenness. Defendant kept the keys to the car.

That night, between 12:00 and 1:00 a.m., a tan Ford Mustang with two people in it drove up to a Gulf station off Murchison Road in or near the City of Fayetteville. A man with curly, blond, sandy hair, wearing a white tee shirt and dungarees, got out on the passenger side and put $5.00 worth of gasoline into the car. The station attendant did not see anyone else in the car. As the car left the station, the attendant wrote down the license number and communicated it to the sheriff's department.

On said night Donald Ray Jones was operating a gas station on West Hudson Street in Fayetteville belonging to Service

Distributing Company. At around 1:30 a.m., while Jones and his friend Hubert Driggers were in the station talking, a man, later identified by Jones and Driggers as defendant, entered the station, pulled a handgun on Jones and demanded money. The man had brown hair and was wearing brown khaki pants, a blue jean jacket but no shirt. Jones proceeded to give the intruder several rolls of quarters, nickels and dimes; also two bundles of $1.00 bills containing twenty-five to the bundle, with rubber bands around the bundles; also "some tens and fives". The total amount missing from the station was $203.00. After getting the money, the robber backed out of the station, entered a light colored Mustang and sped away on Charles Street, a dirt street, which ran by the side of or behind the station premises. Jones called police and they came to the station immediately.

On the night in question, Lorenda Conne was living at 203 Charles Street, approximately 300 yards from the Service Distributing Company station. While sitting in her living room at about 1:35 a.m. she heard a car racing its engine. She went to her window, looked out and saw a man dressed in light colored clothing get out of the passenger side of the car, a Mustang. He proceeded to the front of the car and tried to push it out of some sand. The driver, dressed in dark clothing, got out and also attempted to push the car out of the sand. After making two or three unsuccessful attempts to extricate the car, the two men ran into the woods across the street from the Conne residence. Approximately one minute later, a police car, operated by Officer Wayne Alsup of the Fayetteville Police Department arrived at the scene.

Alsup observed that the brown colored Mustang was stuck in the sand. There was no one in the car and both doors were open. He was soon joined by Deputy Sheriff Simms. Very soon thereafter, they observed a flash of light and heard "a bang, loud noise" from the wooded area some 100 yards away from the stuck car. Those two officers, together with other officers who converged from the opposite direction, went into the woods to investigate the blast. As Officers Alsup and Simms approached Ladley Street (which roughly parallels Charles Street) they found a white male, later identified as Bullard, sitting on the ground by a small outbuilding. Bullard was bleeding from his head, did not respond to the officers and later died from a bullet wound in his

head. He was dressed in a white tee shirt and blue jean pants and had a buck knife in a sheath on his side. An autopsy revealed that Bullard died from a single bullet wound to his head; that the bullet was fragmented; and the medical expert stated as his opinion that the gun which fired the bullet was not fired at close range. The place where Bullard was found was some 40 feet from a residence, and there were numerous other residences located in that area of Ladley Street.

After finding Bullard, Officer Alsup returned to the Mustang and examined it more closely. He found several rolls of coins in the car, later determined to amount to $49.00.

During the early morning hours of the night in question, Captian Doug Bramble of the Cumberland County Sheriff's Department, was driving north on U.S. 301 south of Fayetteville. He had received a radio transmitted message (supposedly relating to the robbery and providing a description of the suspect). Seeing a man running across U.S. 301 toward the Americana Motel, Captain Bramble drove to the motel, overtook the runner and ordered him to stop. The man turned out to be defendant and at the time was wearing khaki pants and a blue denim jacket but no shirt. Other officers arrived at the scene and a search of defendant disclosed $153.00 in his pockets. This included two bundles of $1.00 dollar bills with $25.00 "in each stack in rubber bands". The officers found a .38 caliber Colt revolver near a bush on the motel lawn. The weapon was cocked and contained one bullet. Tests failed to identify any fingerprints on the gun.

The lead fragments of the bullet removed from Bullard's head were so badly deformed that an S.B.I. expert was unable to determine whether the bullet had been fired from the gun found on the motel lawn. All of the police officers who testified at the trial denied firing any weapon.

Defendant offered no evidence.

[4]  Clearly the evidence was more than sufficient to overcome defendant's motion to dismiss the armed robbery charge. Jones and Driggers were unequivocal in their identification of defendant as the perpetrator of the robbery, and the evidence relating to events following the crime pointed unerringly to defendant's guilt.

[5]   As to the homicide charge, we have a different situation. There was no direct evidence tending to show that defendant committed this offense, and the state had to rely on circumstantial evidence. The applicable rule is stated in *State v. Blizzard,* 280 N.C. 11, 16, 184 S.E. 2d 851 (1971), as follows:

> To warrant a conviction on circumstantial evidence, the facts and circumstances must be sufficient to constitute substantial evidence of every essential element of the crime charged. *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431. Guilt must be a legitimate inference from facts established by the evidence. When the facts and circumstances warranted by the evidence do no more than raise a suspicion of guilt, they are insufficient to make out a case and a motion to dismiss should be allowed.

*Accord, State v. Pinyatello,* 272 N.C. 312, 158 S.E. 2d 596 (1968); *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741 (1967).

While, in the case at hand, the state presented substantial evidence tending to show that a homicide was committed, it failed to present substantial evidence that defendant committed the homicide. There were numerous police officers with weapons in the area at the time Bullard was shot; although the state showed that many of the officers did not fire a weapon, it is not clear that no officer fired one. The evidence further showed that defendant and Bullard ran from the car into the woods together but Bullard was not shot at close range. It also showed that Bullard was in a thickly settled residential area, and that he was near an outbuilding within 40 feet of one residence when he was shot; there was no evidence that someone in that residence or in any of the other nearby residences on Ladley Street did not fire a shot.

We hold that the facts and circumstances supported by the evidence do nothing more than raise a suspicion of defendant's guilt of homicide. Therefore, the motion to dismiss that charge should have been allowed. The verdict finding defendant guilty of involuntary manslaughter is vacated.

Defendant next contends that the trial court erred in submitting involuntary manslaughter as an alternative verdict in the murder case. Since we have already held that all homicide

---

State v. Daniels

---

charges should have been dismissed at the close of all the evidence, we do not reach this issue.

We have carefully considered all of defendant's other assignments of error and have concluded that they are without merit.

[6] While we have held that the trial court erred in denying defendant's motion to dismiss the homicide charge, this error does not require that the judgment appealed from be disturbed. Where the jury renders a verdict of guilty on each count of a bill of indictment, an error in the trial or in the charge of the court as to one count is cured by the verdict on the other count where the offenses which are charged are of the same grade and punishable alike, only one sentence is imposed, and the error relating to one count does not affect the verdict on the other. The same result follows if the error relates solely to the lesser count in the indictment. *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971), *cert. denied,* 404 U.S. 1023 (1972); *State v. McCaskill,* 270 N.C. 788, 154 S.E. 2d 907 (1967); *State v. Vines,* 262 N.C. 747, 138 S.E. 2d 630 (1964); 4 Strong's N.C. Index 3d, Criminal Law § 171.1.

Although defendant's case does not fall precisely within the rule which is stated above, we think that the rule is applicable to this situation. Defendant was tried on charges of first-degree murder and armed robbery. Had he been convicted of first-degree murder, he would have received the death penalty. G.S. 14-17. Upon his conviction of armed robbery, the court was authorized to impose a prison sentence of not less than seven years and not more than life imprisonment. G.S. 14-87(a). The court submitted involuntary manslaughter as an alternative verdict on the murder count. Defendant was found guilty of that lesser charge. At the time of defendant's trial, involuntary manslaughter was punishable by fine or imprisonment or both in the discretion of the court. G.S. 14-18. In any case, no prison sentence for involuntary manslaughter may exceed ten years.[1] G.S. 14-2.

Because of the verdicts rendered by the jury, the armed robbery charge became the dominant charge. For the purpose of

---

1. The changes in penalties for various offenses which are prescribed by Chapter 760 of the 1979 Session Laws do not apply to this case because they become effective on 1 July 1980.

sentencing, the court consolidated the charges and imposed a sentence of life imprisonment. It is self-evident that the single sentence imposed was within the parameters of the punishment authorized for the crime of armed robbery.

Our decision is:

In the murder case, verdict vacated.

In the trial of the armed robbery case and in the judgment entered, we find

No error.

Justice BROCK did not participate in the consideration or decision of this case.