STATE OF NORTH CAROLINA v. MAHAMED ABDILAHI MOHAMUD

No. COA08-1111

(Filed 1 September 2009)

**Drugs— instructions—khat as Schedule I substance—plain error**

There was plain error entitling defendant to a new trial for possession with intent to sell and deliver a Schedule I controlled substance where the jury was instructed that khat is a Schedule I controlled substance; the Schedule I substance is actually cathinone, which only exists in khat for 48 hours after harvest; and the State introduced evidence of three different quantities of khat, only one of which was tested and found to contain cathinone. Based on the erroneous instruction, the jurors could have found defendant guilty based on possession of the untested quantities even if they did not believe that those quantities contained cathinone.

Appeal by defendant from judgment entered 4 April 2008 by Judge J. Gentry Caudill in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 March 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Michael D. Youth, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for defendant.*

BRYANT, Judge.

Mahamed Abdilahi Mohamud (defendant) appeals from a judgment entered upon a jury verdict finding him guilty of possession with intent to sell or deliver a Schedule I controlled substance. As discussed below, we grant defendant a new trial.

*Facts*

Cathinone is a Schedule I controlled substance. Cathinone is found in khat, a plant grown in African and Middle Eastern countries. Khat is present while the plant is growing and within forty-eight hours after harvest. Khat is often transported in frozen form to the United States via the United Kingdom and thaws during transit. After the khat has been harvested, the cathinone begins breaking down into cathine, a less potent Schedule IV substance.

On 21 July 2006, Charlotte-Mecklenburg Police Department officers intercepted two packages at a Federal Express facility in Charlotte that had been shipped overnight from London. The packages were heavily taped and damp to the touch. A drug-sniffing dog indicated the boxes contained narcotics. The boxes were addressed to "F. Rosi" at 3119 Central Avenue, Room G, Charlotte, North Carolina. The officers seized the boxes, and after obtaining a warrant, opened them and found bundles of khat. Several bundles of khat were removed from each box and stored in a freezer to be tested later. The remaining bundles were repackaged and used in a controlled delivery.

Prior to 21 July 2006, Federal Express driver David Laing had delivered packages to defendant on six occasions. Laing was suspicious of the packages because they were heavily taped, damp to the touch, and originated in the United Kingdom. Each time Laing delivered the packages, defendant would approach Laing's truck outside an apartment building on Central Avenue in Charlotte, North Carolina.

Around lunchtime on 21 July, defendant approached Laing at an auto parts store approximately two blocks from the apartment. Defendant asked for the intercepted packages and provided a name, address, and tracking number. Laing told defendant the packages were not on the truck, and defendant then asked that they be delivered to apartment F, rather than apartment G.

Shortly afterwards, Officer Daniel Phillips, disguised as a Federal Express driver, attempted to deliver the packages to 3119 Central Avenue, apartment G. Two individuals in the apartment at that time indicated they were not expecting a package and asked the officer to deliver it to apartment F. Phillips attempted to deliver the package to apartment F twice within approximately thirty minutes, but no one answered the door. Phillips left a failed delivery tag listing his cell number on the door. A few minutes later, Phillips received a call from Benjamin Kemp's cell phone asking for the packages to be delivered to apartment F. When Phillips returned, Kemp answered the door, signed for the packages, and took them from Phillips. Kemp was arrested immediately. When questioned regarding the contents of the packages, Kemp denied knowing their contents, and claimed he had accepted delivery under an ongoing arrangement with defendant. Kemp stated that he signed for deliveries and then gave the packages to defendant in exchange for forty dollars. After his arrest, Kemp tried to have defendant retrieve the packages, but his attempt failed.

Officers went to defendant's apartment and requested permission to enter and search for narcotics. Defendant granted permission and officers found khat wrappings and a small plastic bag containing dried khat in his kitchen.

Defendant was indicted for possession with intent to sell or deliver cathinone, a Schedule I controlled substance. Upon a jury verdict of guilty, defendant was sentenced as a Level I offender to a prison term of six to eight months, suspended, with thirty days active time and 36 months supervised probation. Defendant appeals.

On appeal, defendant argues the trial court: (I) erred by denying defendant's motion to dismiss; (II) committed plain error by instructing the jury that khat is a Schedule I controlled substance; (III) committed plain error by allowing a witness to testify to an improper legal conclusion regarding defendant's guilt; (IV) committed plain error by allowing expert opinion testimony that the amount of khat seized "would have to be for distribution"; and (V) erred when giving a definition of delivery to the jury. Because we grant defendant a new trial based on plain error in the jury instruction on khat (argument II), we do not address his other arguments.

*Analysis*

Defendant argues the trial court committed plain error entitling him to a new trial when it instructed the jury that khat is a Schedule I controlled substance. We agree and hold that defendant is entitled to a new trial.

Defendant did not object to the relevant instruction at trial, and thus we review for plain error. *State v. Gaines*, 345 N.C. 647, 678, 483 S.E.2d 396, 415, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997). To prevail under this standard of review, defendant must show that "the error in the trial court's jury instructions [is] 'so fundamental as to amount to a miscarriage of justice or [is one] which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)). This standard is rarely met when a criminal defendant fails to object to an improper instruction at trial. *Gaines*, 345 N.C. at 678, 483 S.E.2d at 415. In its brief to this Court, the State concedes that the instruction was erroneous, but contends it did not rise to the level of plain error.

Defendant was indicted on a charge of possessing cathinone, a Schedule I controlled substance, with the intent to sell or deliver it. N.C. Gen. Stat. § 90-95(a)(1) (2007). Khat is not listed as a controlled substance in the General Statutes of North Carolina. N.C. Gen. Stat. § 90-89 (2007). The trial court instructed the jury, in pertinent part:

> The Defendant has been charged with possessing *khat* with the intent to sell or deliver it. For you to find the Defendant guilty of this offense, the State must prove two things beyond a reasonable doubt: First, that the Defendant knowingly possessed *khat*, and *I instruct you that khat is a Schedule I controlled substance. . . .* The second element is that the Defendant intended to sell or deliver *khat. . . .*

(Emphasis added.) The trial court went on to refer to khat throughout the instruction rather than cathinone.

Here, the State introduced evidence about three different quantities of khat: a sample taken from the Federal Express boxes between 8 a.m. and 10 a.m. prior to their delivery to Kemp, the remaining khat which was eventually delivered to Kemp, and khat seized from the kitchen of apartment G. Only the sample was frozen, tested and found to contain cathinone; the other two quantities of khat were never tested. The evidence also shows that the delivery to Kemp occurred at some time at least thirty minutes after the officers began to break for lunch, presumably after noon. Further, the State presented evidence about the nature of khat, specifically that while cathinone is present in living khat, it begins breaking down into cathine, a Schedule IV controlled substance within forty-eight hours after harvest. Thus, the jury was aware that one may possess khat without possessing cathinone, and the two terms should not be used interchangeably. The jury also knew that the only khat tested and found to contain cathinone was sampled hours before it was delivered to Kemp.

After careful review of the record, we conclude that based on the trial court's erroneous instruction the jurors could have found defendant guilty if they believed he possessed the khat in the kitchen of apartment G or the khat delivered to Kemp, even if they did not believe either of those quantities contained cathinone. Indeed, the trial court specifically instructed them that they could do so. Because the khat actually delivered to Kemp allegedly on defendant's behalf was never tested and found to contain cathinone, we conclude that it is probable that the jury would have acquitted defendant of possess-

**STATE v. MOHAMUD**

[199 N.C. App. 610 (2009)]

ing cathinone, even though they found that he possessed khat. The State itself emphasizes the possibility for confusion between the terms in its brief when it points out that a law enforcement officer qualified as an expert in this case at one point referred to khat rather than cathinone as a Schedule I controlled substance.

Given such confusion in the testimony of at least one expert witness for the State and the trial court's erroneous instruction to the jury, we hold that defendant has shown plain error. *Collins*, 334 N.C. at 62, 431 S.E.2d at 193. Because the trial court committed plain error in instructing the jury that khat is a Schedule I controlled substance, defendant is entitled to a new trial. We need not address defendant's additional assignments of error.

NEW TRIAL.

Judges ELMORE and STEELMAN concur.