STATE OF NORTH CAROLINA v. ROBIN LIVICE FOYE

No. COA11-1281

(Filed 17 April 2012)

**1. Motor Vehicles—driving while impaired—driving while license revoked—sufficient evidence—driver of vehicle**

The trial court did not err in a driving while impaired and driving while license revoked case by denying defendant's motion to dismiss for insufficient evidence. The State presented sufficient evidence of all elements of both charges, including that defendant was the driver of the vehicle.

**2. Motor Vehicles—driving while impaired—driving while license revoked—jury instructions—reasonable doubt—burden of proof not lowered—no plain error**

The trial court did not commit plain error in a driving while impaired and driving while license revoked case by giving an erroneous instruction to the jury on reasonable doubt which improperly lowered the State's burden of proof. Additional language added by the judge, when viewed together with the correct pattern jury instruction, did not lower the burden to less than reasonable doubt or otherwise prejudice defendant. Furthermore,

STATE v. FOYE

[220 N.C. App. 37 (2012)]

the trial court's additional language did not amount to a structural error which infected defendant's entire trial process.

**3. Judges—duty of impartiality—jury instruction—reasonable doubt—not erroneous—no violation**

The trial court did not violate its duty of impartiality in a driving while impaired and driving while license revoked case by giving an erroneous jury instruction which lowered the State's burden of proof. The trial court's additional language in the jury instruction on reasonable doubt was not erroneous.

**4. Motor Vehicles—driving while impaired—driving while license revoked—jury instructions—reasonable doubt—no coercion**

The trial court did not coerce the jury into returning guilty verdicts in a driving while impaired and driving while license revoked case by defining reasonable doubt in a way that facilitated findings of guilt on both charges. The trial court's additional language to the jury instruction on reasonable doubt was not erroneous.

Appeal by defendant from judgment entered 11 and 12 May 2011 by Judge Paul L. Jones in Lenoir County Superior Court. Heard in the Court of Appeals 6 March 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Tamara S. Zmuda, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender David W. Andrews, for defendant appellant.*

McCULLOUGH, Judge.

Robin Livice Foye ("defendant") appeals from his convictions of driving while intoxicated ("DWI") and driving while license revoked ("DWLR"). Defendant contends the State failed to prove that he was actually driving his car, an essential element of both crimes. Furthermore, he argues the trial court erred in its instruction to the jury on the standard of reasonable doubt. For the following reasons, we disagree and find no error on behalf of the trial court.

## I. Background

On 24 October 2009, at around 5:00 a.m., Officer William Grosclose, who at the time had been a traffic officer with the Kinston Department of Public Safety for almost two years, was parked at

Grainger Stadium in Kinston, North Carolina, approaching the end of his shift when he heard a loud boom. He was unsure of the cause of the noise and could not locate its origin. A few minutes later he received a call from dispatch alerting him to a wreck on Liberty Hall Road, about one to one-and-one-half miles away.

Officer Grosclose arrived at the scene of the accident to find a damaged 1989 Buick sedan in a ditch on the side of the road. Liberty Hall Road is a two-lane residential road and the vehicle was located near a curve and an intersection. Officer Grosclose noticed blood between the driver's seat and passenger seat, on the steering wheel, and on the back of the passenger seat. No one was in the car and there were not any keys in the ignition. The driver's side door was jammed closed, but the passenger door was wide open. Officer Grosclose looked up the registration for the vehicle, determined that it belonged to defendant, and obtained his address. He requested that other officers check defendant's residence, but they reported that no one was home. As the other officers tracked back from defendant's home to the scene of the accident, they located defendant on East Bright Street at approximately 5:30 a.m.

Officer Grosclose joined the other officers on East Bright Street and found defendant leaning against a patrol car. Defendant had an injury to the left side of his cheek, consistent with the impact of a steering wheel or seatbelt, and blood on his hands. Defendant's breath emanated a strong odor of alcohol. Additionally, according to Officer Grosclose, defendant appeared unsteady on his feet, slurred his speech, and refused to cooperate with the officers' investigation. Officer Grosclose proceeded to question defendant about the accident, to which he responded with a variety of stories. Defendant initially told Officer Grosclose that he had been at the Ponderosa Club when a fight broke out and his car had been stolen. He then changed his story to his friends having driven the car while he was a passenger. However, officers were unable to obtain any evidence that other people had been at the scene of the accident and the nearby hospitals did not have any reports of patients with injuries matching those possibly caused by the accident. Defendant finally admitted that he had driven the car because he had been jumped at the Ponderosa Club and he thought his life had been threatened. Officer Grosclose testified at trial that defendant's statements "didn't make sense" and "wouldn't piece together." Furthermore, they had "[n]o logical order."

Officer Grosclose attempted to have defendant perform field sobriety tests, but he refused. Officer Grosclose testified that in his

opinion defendant consumed a sufficient amount of alcohol such that his mental and physical faculties were impaired. As a result, he arrested defendant for DWI and DWLR. Following his arrest, defendant also refused a breathalyzer test. Officer Grosclose obtained a search warrant to test defendant's blood. At approximately 7:20 a.m., a paramedic withdrew defendant's blood. Melanie Thornton, a forensic chemist at the North Carolina State Bureau of Investigation Crime Lab, testified that she analyzed defendant's blood and determined that it had a blood alcohol concentration of .18, over twice the legal limit in North Carolina. Defendant was eventually cited for DWI, DWLR, and misdemeanor hit and run.

On 4 October 2010, in Lenoir County District Court before Judge Lonnie Carraway, defendant was found guilty of DWI and DWLR, but acquitted of misdemeanor hit and run. Judge Carraway sentenced defendant as a Level 1 offender to consecutive sentences of twelve months for DWI and forty-five days for DWLR. Defendant appealed to the superior court. On 7 February 2011, Judge Paul L. Jones conducted a trial of defendant's case in Lenoir County Superior Court. The next day Judge Jones dismissed defendant's hit-and-run charge and ordered a mistrial for the DWI and DWLR charges due to a hung jury.

On 9 May 2011, defendant had his retrial before Judge Jones. At the end of all evidence defendant's counsel made a motion to dismiss asserting that there was "nothing to link defendant to driving the car" and that there was "no evidence that anyone observed him driving the car." Judge Jones responded, "Well, there was testimony by the officer that defendant] said he was driving." Consequently, the trial court denied defendant's motion to dismiss. On 12 May 2011, the jury returned guilty verdicts against defendant on the charges of DWI and DWLR. The trial court entered a consolidated sentence of twelve months for both charges. Defendant gave oral notice of appeal.

## II.  Analysis

### A.  Motion to Dismiss

**[1]** Defendant's first issue on appeal is that the trial court erred in denying his motion to dismiss because the State failed to establish the *corpus delicti* of his DWI and DWLR charges. We disagree.

Our Court reviews the denial of a motion to dismiss *de novo*. *State v. Adams*, ___ N.C. App. ___, ___, 721 S.E.2d 391, 394 (2012). Under *de novo* review we consider the matter anew and freely substitute our own judgment for that of the lower court. *Sutton v. Dep't*

*of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 341 (1999). To survive a motion to dismiss the State must provide substantial evidence of each essential element of the offense. *State v. Davis*, 74 N.C. App. 208, 212, 328 S.E.2d 11, 14 (1985). Our review of the sufficiency of the evidence "is the same whether the evidence is circumstantial or direct, or both." *State v. Garcia*, 358 N.C. 382, 413, 597 S.E.2d 724, 746 (2004) (internal quotation marks and citation omitted). The evidence is to be viewed in the light most favorable to the State with the State receiving any reasonable inferences therefrom. *Id.* at 412-13, 597 S.E.2d at 746. Furthermore, when the evidence only raises a suspicion of guilt, a motion to dismiss must be granted. *State v. Daniels*, 300 N.C. 105, 114, 265 S.E.2d 217, 222 (1980), *superseded by statute on other grounds in State v. Wortham*, 318 N.C. 669, 351 S.E.2d 294 (1987). However, "[i]f there is more than a scintilla of competent evidence to support allegations in the warrant or indictment, it is the court's duty to submit the case to the jury." *State v. Everhardt*, 96 N.C. App. 1, 11, 384 S.E.2d 562, 568 (1989) (internal quotation marks and citation omitted), *aff'd*, 326 N.C. 777, 392 S.E.2d 391 (1990).

Defendant argues the State failed to present substantial independent evidence that he drove his car on the morning of 24 October 2009. In making his argument, defendant contends the State may not solely rely on a naked, extrajudicial confession to support a criminal conviction. *See State v. Cope*, 240 N.C. 244, 247, 81 S.E.2d 773, 776 (1954). However, defendant argues the State must provide other corroborating evidence and in the case at hand the other evidence offered by the State does not substantiate defendant's single comment that he drove his car after being jumped at the Ponderosa Club. *Id.*

Under the *corpus delicti* rule, a conviction cannot be based solely on a defendant's confession. *State v. Smith*, 362 N.C. 583, 592, 669 S.E.2d 299, 305 (2008). Rather, "other corroborating evidence is needed to convict for a criminal offense." *Id.* Moreover, in noncapital cases, a defendant's conviction will be upheld by the defendant's confession where the confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that the defendant had the opportunity to commit the crime. *See State v. Trexler*, 316 N.C. 528, 533, 342 S.E.2d 878, 881 (1986) (DWI conviction upheld where sufficient independent evidence existed to show that defendant appeared impaired, was actually impaired, and otherwise the wreck was unexplained).

Defendant argues that his lone confession in the middle of his sequence of rambling excuses was not sufficient to meet the State's burden of proving that defendant actually drove his car.

> A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:
>
> (1)  While under the influence of an impairing substance; or
>
> (2)  After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration; or
>
> (3)  With any amount of a Schedule I controlled substance, as listed in G.S. 90 89, or its metabolites in his blood or urine.

N.C. Gen. Stat. § 20-138.1(a) (2011). Additionally, any person is guilty of the crime of DWLR "whose drivers license has been revoked who drives any motor vehicle upon the highways of the State while the license is revoked[.]" N.C. Gen. Stat. § 20-28(a) (2011). Defendant contends the State did not present sufficient evidence to corroborate his alleged confession and prove that it was trustworthy. In arguing so, defendant notes that his confession contradicted his previous statements; there were no eyewitnesses to him having driven the car or getting out of the driver's seat; he was not found with the keys to the vehicle in his possession, which can be a factor in determining if he drove, *see State v. Sawyer*, 230 N.C. 713, 715, 55 S.E.2d 464, 466 (1949); and his injuries did not establish that he was driving the car because the blood on the back of the passenger seat could have been from him sitting in the backseat. Defendant contends these discrepancies are merely suspicion and are not sufficient to meet the level of substantial evidence. *State v. Hamilton*, 145 N.C. App. 152, 158, 549 S.E.2d 233, 237 (2001).

Alternatively, the State argues that it presented sufficient independent evidence tending to establish the *corpus delicti* of the crime charged. The State notes that

> "[i]ndependent evidence of the *corpus delicti* . . . does not equate with independent evidence as to each essential element of the offense charged. Applying the more traditional definition of *cor-*

*pus delicti*, the requirement of corroborative evidence would be met if that evidence tended to establish the essential harm, and it would not be fatal to the State's case if some elements of the crime were proved solely by defendant's confession."

*State v. Highsmith*, 173 N.C. App. 600, 604, 619 S.E.2d 586, 590 (2005) (quoting *State v. Parker*, 315 N.C. 222, 229 S.E.2d 487, 491 (1985)). The State contends it presented substantial evidence regarding the trustworthiness of defendant's statement and his opportunity to commit the crime. In particular, the State noted that the vehicle was registered to defendant; defendant was found walking on a road near the scene; defendant had injuries consistent with someone that had been in a wreck; and defendant concedes he was impaired based on the blood test. In regard to the injuries, defendant had a cut on his cheek consistent with blood on the steering wheel; there was blood between the driver's and passenger seat, as well as on the back of the passenger seat, consistent with defendant having to crawl out the passenger door due to the driver's side door being stuck closed. While this is merely a scenario that could have happened, it is sufficient, in consideration with the other evidence,

> for a reasonable jury to infer that defendant was under the influence of an impairing substance when he drove the vehicle.

> There are numerous possible other scenarios, . . . . But,

>> to hold that the trial court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of facts. . . . Proof of guilt beyond a reasonable doubt is required before the jury can convict. . . . What the evidence proves or fails to prove is a question of fact for the jury.

*State v. Mack*, 81 N.C. App. 578, 583, 345 S.E.2d 223, 226 (1986) (internal quotation marks and citations omitted). Consequently, viewing the evidence in the light most favorable to the State, the State presented sufficient evidence to survive the motion to dismiss; and as a result, the trial court did not err in denying defendant's motion to dismiss at the close of all evidence.

## B. Jury Instruction on Reasonable Doubt

[2] Defendant's next argument is that the trial court committed plain error by giving an erroneous instruction to the jury on reasonable doubt, which improperly lowered the State's burden of proof. We disagree.

Our Court generally reviews jury instructions *de novo. State v. Jenkins,* 202 N.C. App. 291, 296, 688 S.E.2d 101, 105 *disc. review denied,* 364 N.C. 245, 698 S.E.2d 665 (2010). However, jury instructions which are not objected to are reviewed for plain error. *State v. Mohamud,* 199 N.C. App. 610, 612, 681 S.E.2d 541, 543 (2009). Plain error exists where the error is " 'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]' " *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir. 1982)). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan,* 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

In the case at bar, the trial court initially gave pattern jury instruction, N.C.P.I., Crim. 101.10 (2011), regarding the State's burden of proof and reasonable doubt. Twenty-six minutes later the jury indicated that it was deadlocked and was set to reenter the courtroom when it decided to rediscuss. Nine minutes later the jury returned to the courtroom and the foreperson asked "to be reminded of the definition of the burden of proof beyond a reasonable doubt and we wanted to also look at some of the photographic evidence that was submitted." The trial court asked if either side had an objection to a reinstruction, which they did not, and the trial court proceeded to again give the pattern jury instruction, adding "[r]emember, nothing can be proved 100 percent basically, but beyond a reasonable doubt. So you have to decide for yourself what is reasonable, what makes sense." The jury returned to deliberations and six minutes later found defendant guilty on both charges.

In adding its own words to the pattern jury instruction, defendant contends the trial court diluted the State's burden of proof. Defendant notes that the right to proof beyond a reasonable doubt is a well-established principle in our legal system. *In re Winship,* 397 U.S. 358, 363-64, 25 L. Ed. 2d 368, 375 (1970). The additional language allegedly undermined the principle by defining doubt in a way that allowed the jury to convict defendant without being fully satisfied or entirely convinced of his guilt. Furthermore, defendant argues the trial court failed to inform defense counsel of the proposed additional language, which was in violation of N.C. Gen. Stat. § 15A-1234(c) (2011), and any "failure to comply with the statutory mandate is reversible error." *In re Eades,* 143 N.C. App. 712, 713, 547 S.E.2d 146, 147 (2001).

On the other hand, the State contends the instructions to the jury, as a whole, were conceptually correct. " '[A]s a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.' " *State v. Hooks*, 353 N.C. 629, 633, 548 S.E.2d 501, 505 (2001) (quoting *Holland v. United States*, 348 U.S. 121, 140, 99 L. Ed. 150, 167 (1954)). Moreover,

> " '[t]he charge of the court must be read as a whole . . . , in the same connected way that the judge is supposed to have intended it and the jury to have considered it. . . .' It will be construed contextually, and isolated portions will not be held prejudicial when the charge as [a] whole is correct. If the charge presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no grounds for reversal."

*Id.* at 634, 548 S.E.2d at 505 (quoting *State v. Rich*, 351 N.C. 386, 393-94, 527 S.E.2d 299, 303 (2000)).

> If, when so construed, it is sufficiently clear that no reasonable cause exists to believe that the jury was misled or misinformed, any exception to it will not be sustained even though the instruction could have been more aptly worded.

*State v. Maniego*, 163 N.C. App. 676, 685, 594 S.E.2d 242, 248 (2004) (internal quotation marks and citation omitted). The State notes the first two paragraphs of the instruction given to the jury were from the pattern jury instruction on reasonable doubt and the additional statement of "nothing can be proved 100 percent basically, but beyond a reasonable doubt, so you have to decide for yourself what is reasonable, what makes sense[,]" is more or less a correct statement of the law. Furthermore, defendant conveniently neglects to discuss the trial court's final sentences in which it stated, "Any questions about the definition of reasonable doubt? The State has the burden and the defendant has no burden. That's why he doesn't have to testify." Evidently, the trial court attempted to rephrase the definition of reasonable doubt in a manner in which the jury could understand, but at the same time maintain that the entire burden was on the State and not defendant.

Our Supreme Court has addressed this issue on a few occasions where the trial court, in explaining reasonable doubt, used the descriptions " "'not satisfied beyond any doubt, or all doubt; or a vain or fanciful doubt, but rather what the term implies, a reasonable

doubt, one based on common sense and reason, generated by insufficiency and proof[,]" ' " *State v. Flippin*, 280 N.C. 682, 687, 186 S.E.2d 917, 921 (1972) (quoting *State v. Brackett*, 218 N.C. 369, 372, 11 S.E.2d 146, 148 (1940)), and "[t]his does not mean satisfied beyond all doubt. Neither does it mean satisfied beyond some shadow of a doubt or a vain, imaginary, or fanciful doubt." *State v. Miller*, 344 N.C. 658, 671, 477 S.E.2d 915, 923 (1996). Even more, one trial court described reasonable doubt as meaning "just that, a reasonable doubt. It is not a mere possible, fanciful or academic doubt, nor is it proof beyond a shadow of a doubt nor proof beyond all doubts, for there are few things in human existence that are beyond all doubts." *State v. Adams*, 335 N.C. 401, 420, 439 S.E.2d 760, 770 (1994). To be upheld, the instruction must not have "indicate[d] that the burden of proof is less than 'beyond a reasonable doubt.' " *Miller*, 344 N.C. at 671-72, 477 S.E.2d at 923. Based on the cases cited and the trial court's final statements, we cannot see how the additional language that "nothing can be proved 100 percent basically," when viewed together with the correct pattern jury instruction, lowered the burden to less than reasonable doubt or otherwise prejudiced defendant.

Defendant further argues the trial court's instruction to the jury amounted to structural error.

> Structural error is a rare form of constitutional error resulting from "structural defects in the constitution of the trial mechanism" which are so serious that " 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.' " "Such errors 'infect the entire trial process,' and *necessarily* render a trial fundamentally unfair[.]' "
>
> . . . In fact, the United States Supreme Court emphasizes a strong presumption *against* structural error[.]

*State v. Garcia*, 358 N.C. 382, 409-10, 597 S.E.2d 724, 744 (2004) (citations omitted). However, as discussed above, we do not believe the trial court's additional language amounted to a structural error which infected defendant's entire trial process. Consequently, the trial court's jury instruction, when viewed as a whole, does not amount to structural or plain error.

## C. Duty of Impartiality Owed to the Jury

[3] Defendant's third argument is similar to his second argument in that it relates to the trial court's added language to the jury instruc-

tion, but defendant is now arguing that the trial court violated its duty of impartiality by lowering the State's burden of proof while the jury was deadlocked. As noted above, we do not believe the trial court's additional language was a violation, and consequently we disagree with defendant's current argument.

Defendant failed to raise its issue regarding the trial court's impartiality in the lower court; nonetheless, a question of whether the trial court violated its duty of impartiality is preserved as a matter of law notwithstanding defendant's failure to raise the issue. *State v. Young*, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989). In determining whether the trial court violated its duty of impartiality we apply a "totality of the circumstances" test. *State v. Davis*, 353 N.C. 1, 41, 539 S.E.2d 243, 269 (2000). "Whether the judge's language amounts to an expression of opinion is determined by its probable meaning to the jury, not by the judge's motive." *State v. McEachern*, 283 N.C 57, 59-60, 194 S.E.2d 787, 789 (1973). Additionally, the timing of the remarks must be considered. *See State v. Jenkins*, 115 N.C. App. 520, 525, 445 S.E.2d 622, 625 (1994).

At issue is whether the trial court abandoned its neutrality in regard to the question of defendant's guilt. Defendant contends the trial court improperly conveyed its opinion of the case to the jury through its additional language in the instruction, which effectively told the jury that convicting defendant would be proper even if the State had not proven guilt beyond a reasonable doubt. It is well settled that "[j]urors respect the judge and are easily influenced by suggestions, whether intentional or otherwise, emanating from the bench." *State v. Holden*, 280 N.C. 426, 429, 185 S.E.2d 889, 892 (1972). "The slightest intimation from the trial judge as to the weight or credibility to be given evidentiary matters will always have great weight with the jury, . . ." *State v. Grogan*, 40 N.C. App. 371, 374, 253 S.E.2d 20, 22 (1979). N.C. Gen. Stat. §§ 15A-1222-32 (2011), bar the trial court from expressing any opinion in front of the jury regarding a question of fact. Thus, defendant claims the trial court's instruction indicates that guilty verdicts would be proper, in the case at hand, because the State could not be expected to fully establish or entirely convince the jury that defendant was guilty.

However, the State argues the trial court properly instructed the jury on the standard of reasonable doubt and therefore did not violate its duty to remain impartial. "A remark by the court is not grounds for a new trial if, when considered in the light of the circumstances under

which it was made, it could not have prejudiced defendant's case. The burden rests on the defendant to show that the trial court's remarks were prejudicial." *State v. Anderson*, 350 N.C. 152, 179, 513 S.E.2d 296, 312 (1999) (internal quotation marks and citations omitted). Sometime prior to the trial court's questionable instruction it had informed the jury that

> [t]he law requires the presiding judge to be impartial and express no opinions as to the facts. You are not to draw any inference from any ruling that I have made. You must not let any inflection in my voice or expression on my face, or any question I've asked a witness or anything else that I have done during this trial influence your findings. It is your duty to find the facts of the case from the evidence as presented.

Furthermore, the colloquy between the trial court and defense counsel indicates that the jury may not have been deadlocked at the time of the trial court's additional language.

> The Court: In the matter of State versus Robin Foye, there's some indication that the jury is deadlocked.

> Mr. Corrigan: I thought the issue was that they messed up the verdict sheet?

> The Court: Well, that's the earlier version.

> Mr. Corrigan: We didn't hear the second version.

> The Court: Bring them back in.

> Bailiff: Now they're rediscussing it again.

> Mr. Corrigan: I guess they are not hopelessly deadlocked, huh, Judge?

> The Court: Deadlocked, but maybe not hopeless. What did they do with the verdict sheet they messed up?

The jury then discussed the case for nine minutes and returned, asking for the reinstruction on reasonable doubt and to view all the photographic evidence. Neither defense counsel, nor the trial court, appears to have known what the jury was thinking and consequently we cannot tell either. The State presented substantial evidence of the crimes and the trial court attempted to insulate itself from any views of impartiality by instructing the jury to not draw any inferences from its comments. Thus, the trial court did not err in giving its additional

instruction on reasonable doubt because it did not violate its duty of impartiality.

## D. Coercion of the Jury

[4] Defendant's final argument again revolves around the trial court's added language to the pattern jury instruction on reasonable doubt. This time defendant contends the trial court coerced the jury into returning guilty verdicts by defining reasonable doubt in a way that facilitated findings of guilt on both charges. We again disagree.

As stated above, defendant failed to object to the trial court's instruction to the jury; and as a result, we review defendant's argument for plain error. *State v. Hunt*, 192 N.C. App. 268, 270, 664 S.E.2d 662, 663 (2008). In reviewing the trial court's instruction, we must look at the totality of the circumstances. *State v. Dexter*, 151 N.C. App. 430, 433, 566 S.E.2d 493, 496 (2002). Moreover, we must look for any indications of a deadlock, *State v. Adams*, 85 N.C. App. 200, 210, 354 S.E.2d 338, 344 (1987), and determine whether the particular instruction altered the burden of proof. *State v. Dial*, 38 N.C. App. 529, 533, 248 S.E.2d 366, 368 (1978).

Defendant argues the trial court's instruction on reasonable doubt improperly influenced the jury's deliberations and caused the jury to return guilty verdicts where it is likely that it would not have. It is well established that a trial court may not coerce a jury into returning a particular verdict. *Jenkins v. United States*, 380 U.S. 445, 446, 13 L. Ed. 2d 957, 958 (1965). There is no indication that the jury was definitely deadlocked or that the trial court's instruction improperly coerced the jury into returning guilty verdicts.

At the same time the jury asked for a reinstruction on reasonable doubt, it asked for all photographic evidence, which included photographs of the bloodstains within the vehicle, as well as pictures of defendant's various injuries. The photographs could have easily influenced the jury to return guilty verdicts. Furthermore, as previously discussed, the trial court's instruction did not unduly influence the jury to amount to plain error. The trial court even qualified its additional comments by finishing the instruction with the statements, "Any questions about the definition of reasonable doubt? The State has the burden and the defendant has no burden. That's why he doesn't have to testify." Clearly, the trial court left for the jury to decide what was reasonable and the evidence does not prove it likely that the jury would have returned any other verdicts than those of guilty.

Consequently, the trial court did not coerce the jury into returning guilty verdicts and its additional instruction on reasonable doubt did not amount to plain error.

### III.  Conclusion

Based on the foregoing, we find no error on behalf of the trial court. The trial court did not err in denying defendant's motion to dismiss as the evidence at trial was sufficient to submit the issue to the jury. Furthermore, the trial court's additional instruction regarding reasonable doubt did not lower the State's burden of proof, violate the trial court's duty of impartiality, or unduly coerce the jury into returning verdicts of guilty.

No error.

Judges McGEE and GEER concur.